Chief Judge Fuld.
Whether the defendant “ transact [ed] any business within the state ” (CPLB 302) so as to subject him to the jurisdiction of the courts of New York “ [a]s to a cause of action arising from ” such activity, is the question presented by this appeal.
In March of 1967, the defendant, Dr. Bobert A. Franklyn, who lives in California, received a catalogue from the plaintiff Parke-Bernet, a well-known auctioneer of works of art, describing certain paintings to be sold at an auction at its galleries in New York City on April 6. Finding a painting in which he was interested—Les Baigneurs by Boger de la Fresnaye — the defendant sent a letter to the plaintiff in New York, stating that he wished to bid up to $68,000, later increased to $71,000, for that painting. On the day before the auction, the defendant called the plaintiff and requested that ‘ ‘ telephonic communication be established between myself and [Parke-Bernet] during the course of the bidding,” so that he might keep abreast of and take part in the bidding while the auction was actually going on. His desire to participate in this manner was confirmed by a telegram in which the defendant further advised that, during the sale, he ‘1 may bid more depending on activity and may bid on subsequent lots.”
The plaintiff acceded to the defendant’s request and, accordingly, an open telephone line was set up on the evening of the auction between the defendant in Los Angeles and a Mr. Nash, an employee of Parke-Bernet, in the latter’s New York City premises. During the entire course of the auction sale, Nash informed the defendant in California of the bids that were being made, the defendant, in turn, gave Nash his bids and the latter ■ relayed the defendant’s bids to the auctioneer who announced them to the other bidders in the auction room. According to the complaint, two of the defendant’s bids — $70,000 for the de la Fresnaye and $26,000 for another painting, a Paul Klee — *16 were high, and the paintings were knocked down to the defendant as the purchaser.
After billing the defendant and receiving no payment, the plaintiff decided to sue him for the $96,000. Following the procedure prescribed by our long-arm statute (CPLR 302, subd. [a], par. 1), it commenced this action by personally serving a copy of the summons and complaint on the defendant in California. He thereupon moved to dismiss the complaint, pursuant to CPLR 3211 (subd. [a], par. 8), on the ground that the court lacked jurisdiction over his person. After a hearing before a Referee, the court at Special Term granted the motion and ordered the complaint dismissed; a divided Appellate Division affirmed (31 A D 2d 276), and the plaintiff prosecutes its appeal to us as of right.
CPLR 302 (subd. [a], par. 1) vests the courts of this State with “ personal jurisdiction over any nondomiciliary * * * who, in person or through an agent * * * 1. transacts any
business within the state ” as to any cause of action arising from such transaction. The doctrinal developments—by which the bases of jurisdiction over nonresidents were extended beyond the requirement of physical presence to include cases arising out of conduct within the State—were traced in detail in our opinion in Longines-Wittnauer Watch Co. v. Barnes & Reinecke (15 N Y 2d 443, 450-452), and there is little need to review the matter at length here. (See, also, International Shoe Co. v. Washington, 326 U. S. 310; McGee v. International Life Ins. Co., 355 U. S. 220; cf. Hanson v. Denckla, 357 U. S. 235.) We concluded, in the Longines-Wittnauer case (15 N Y 2d 443, 457, supra), that it was the purpose of CPLR 302 to extend the jurisdiction of our State courts to nonresidents who have “ engaged in some purposeful activity [here] * * * in connection with the matter in suit.” (See, also, McKee Elec. Co. v. Rauland-Borg Corp., 20 N Y 2d 377, 382.) And, it is hardly necessary to add, proof of a “ single transaction in New York ” would satisfy this statutory requirement. (Longines-Wittnauer Watch Co. v. Barnes & Reinecke, 15 N Y 2d 443, 456, supra; see McLaughlin, Supplementary Practice Commentary to CPLR 302, McKinney’s Cons. Laws of N. Y., Book 7B [1969 Cum. Supp.], pp. 129-130; 1 Weinstein-Korn-Miller, N. Y. Civ. Prac., *17 1Í302.06.) As one authoritative commentator put it, “ CPLR 302 is a single-act statute requiring hut one transaction—albeit a purposeful transaction—to confer jurisdiction in New York ” (McLaughlin, ibid.).
It is important to emphasize that one need not be physically present in order to be subject to the jurisdiction of our courts under CPLR 302 for, particularly in this day of instant long-range communications, one can engage in extensive purposeful activity here without ever actually setting foot in the State. (See International Shoe Co. v. Washington, 326 U. S. 310, 316-317, supra; Lewin v. Bock Laundry Mach. Co., 16 N Y 2d 1070; Benedict Corp. v. Epstein, 47 Misc 2d 316.) Any implication, in older cases, that physical presence was a necessary factor in obtaining jurisdiction over nonresidents was expressly rejected by the Supreme Court in the International Shoe case — the case which provided the constitutional authority for CPLR 302—where the court wrote (326 U. S., at pp. 316-317): “ The terms 1 present ’ and 1 presence ’ are used merely to symbolize those acivities * * * which courts will deem to be sufficient to satisfy the demands of due process.”
Applying the above principles to the case before us, we find that it falls between the situation where a defendant was physically present at the time the contract was made — the clearest sort of case in which our courts would have 302 jurisdiction (see Longines-Wittnauer Watch Co. v. Barnes & Reinecke, 15 N Y 2d 443, supra; Harry Winston, Inc. v. Waldfogel, 292 F. Supp. 473)—and the situation where a defendant merely telephones a single order from outside the State — a case in which our courts would not have such jurisdiction. (See, e.g., Katz & Son Billiard Prods. v. Correale & Sons, 20 N Y 2d 903.) This defendant, although never actually present, was receiving and transmitting bids over an open telephone line and was an active participant in an auction held here. Moreover, he was directly assisted in this activity by Nash, who was physically present. Whether we view this case as one in which the defendant had personally engaged in purposeful activity here or as one in which—in the language of section 302—he had engaged in such activity “through an agent” present here, there is ample basis for concluding that the defendant is subject *18 to the jurisdiction of our courts with respect to a cause of action arising out of the auction.
Considering, first, the defendant’s direct and personal involvement in activities here, it is highly significant that, on his own initiative, the defendant, in a very real sense, projected himself into the auction room in order to compete with the other prospective purchasers who were there. This activity far exceeded the simple placing of an order by telephone. (Cf. Katz & Son Billiard Prods. v. Correale & Sons, 20 N Y 2d 903, supra.) Dr. Franklyn’s active participation in the bidding which resulted in the paintings’ being sold to him amounted to the sustained and substantial transaction of business here. Indeed, his conduct, the business he was transacting, affected not only the plaintiff but all those who were in the auction room. In acting as he did, to cull from the Supreme Court’s opinion in Hanson v. Denckla (357 U. S. 235, 253, supra), the defendant “ purposefully ” availed himself “ of the privilege of conducting activities” within New York and thereby “ invok[ed] the benefits and protections of its laws” relating to the conduct of auctions. (See, also, Longines-Wittnauer v. Barnes & Beinecke, 15 N Y 2d 443, 458, supra; McKee Elec. Co. v. Rauland-Borg Corp., 20 N Y 2d 377, 382, supra.)
Moreover, even if we were to decide that the defendant’s personal participation in the auction did not amount to the transaction of business here, there is substantial ground for concluding—as did Justice McNally in his dissent below (31 A D 2d, at p.‘ 280) —that Nash, who, of course, was physically present in the New York auction room, was engaged as the defendant’s agent at the time. Although it may be true that an auctioneer is normally regarded as the agent of seller,[1] Mr. Nash was not the auctioneer. Although employed by Parke-Bemet, his sole function during the auction was to assist the defendant and to carry out his instructions. Parke-Bernet had, in effect, “ loaned ” Nash to the defendant for the duration of the sale and he had undertaken, at the defendant’s request, to serve as the link between the latter in California and the auctioneer *19 in the auction room. As this court declared some years ago, “ The principles of law which control in this class of cases are quite well settled. A servant in the general employment of one person, who is temporarily loaned to another person to do the latter’s work, becomes, for the time being, the servant of the borrower ”. (Hartell v. Simonson & Son Co., 218 N. Y. 345, 349.) To say that Mr. Nash, because he was Parke-Bernet’s employee, acted solely as its agent, ignores the realities of what he actually did on the night of the sale.[2]
In sum—the definite and substantial personal involvement of the defendant in the auction here was sufficient, in and of itself, to render him subject to our jurisdiction under CPLR 302. Furthermore, his use of Nash as his assistant and messenger clearly established that he was transacting business in this State “through an agent” within the meaning of the statute. The mere fact that the defendant was able to arrange to conduct his extensive and purposeful activity in New York without having to physically come here does not enable him to avoid the jurisdiction of our courts. The defendant’s motion to dismiss the complaint should have been denied.
The order of the Appellate Division should be reversed, with costs in all courts, and the case remitted to the Supreme Court, New York County, for further proceedings in acordance with this opinion.
Judges Burke, Scileppi, Bergan, Breitel, Jasen and Gibson concur.
Order reversed, etc.

. But cf. Romani v. Harris (255 Md. 389).

. The present case differs materially from others, relied upon by the defendant, in which we have denied jurisdiction. (See Glassman v. Hyder, 23 N Y 2d 354; Standard Wine & Liq. Co. v. Bombay Spirits Co., 20 N Y 2d 13; McKee Elec. Co. v. Rauland-Borg Corp., 20 N Y 2d 377, supra; Kramer v. Vogl, 17 N Y 2d 27.) It is sufficient to point out that in each of those cases, all of which involved agents who were suing their principals, the plaintiff was relying on his own activities within the State, and not those of the defendant, as the basis for jurisdiction. In other words, in no one of these cases had the defendant himself engaged in purposeful activity within the State nor had the cause of action arisen out of transactions with third parties conducted through an agent.