**Louis POTASH, Plaintiff,**

v.

**Robert J. RINGER, Defendant.**

**No. 76C 1671.**

United States District Court, E. D. New York.

Jan. 25, 1977.

Corso & Engelberg, Jericho, N. Y., for plaintiff.

Marshall, Bratter, Greene, Allison & Tucker, New York City, for defendant.

## MEMORANDUM AND ORDER

PLATT, District Judge.

This diversity action was brought by the plaintiff to recover $189,410 on five promissory notes of the defendant which are allegedly due and owing. The defendant moves pursuant to F.R.C.P. 12(b)(2) for dismissal for lack of personal jurisdiction or, alternatively, for an order transferring the

action to the United States District Court for the Central District of California under 28 U.S.C. § 1404(a).

The plaintiff, Louis Potash, was the owner of stock in a New York corporation known as Illustrated World Encyclopedia, Inc. ("IWE"). He alleges that at a meeting at LaGuardia Airport Mr. Ringer and his associate, Clyde Skeen, told Mr. Potash and his partner, Morry Gropper, that they would purchase the plaintiff's stock in IWE for ten dollars a share. On October 28, 1971, in Los Angeles, California, Mr. Potash signed various documents providing for the sale of his stock to Mr. Ringer.

Mr. Ringer, in his affidavit, says that in "October 1971, CLYDE SKEEN (hereafter "SKEEN") and I negotiated and entered into an oral agreement to the best of my recollection, in Los Angeles, California, with plaintiff LOUIS POTASH (hereafter "POTASH") and his partner, MORRY GROPPER (hereafter "GROPPER"), to purchase certain of the IWE shares which POTASH and GROPPER then owned, or would become entitled to under an earn-out agreement . . ."

The plaintiff alleges that in November of 1971 in New York Mr. Potash renegotiated that purchase agreement with Gary Berger who was acting as the defendant's agent. At that time Mr. Potash and Mr. Berger, as "Attorney-in-Fact for Ringer and Skeen", signed a new agreement in New York City. Under this agreement the defendant delivered five promissory notes to the plaintiff, the last one of which was payable May 5, 1974. All these notes remain unpaid.

Mr. Ringer on this point states:

"Later that month or in the first few days of November, 1971, the transaction with POTASH and GROPPER, as a result of further negotiations which, to the best of my recollection, also took place in California, was slightly restructured to provide for the purchase by SKEEN and myself of a lesser amount of POTASH's and GROPPER's IWE stock and to vest SKEEN with a 'call' and POTASH and GROPPER with a 'put' as to their remaining IWE stock. Attached hereto as

Exhibit 'E' is the November 5, 1971 contract between SKEEN and myself, on the one hand, and POTASH on the other, in which we agreed to purchase from him 18,941 shares of IWE for $189,410, to be evidenced by a series of five promissory notes (upon which POTASH sues herein), . . . Exhibit 'E' was executed by Gary Berger in California as SKEEN's and my attorney-in-fact. It is my best recollection that POTASH also executed Exhibit 'E' while he was in California."

Thus there seems to be a sharp conflict as to where the November, 1971 agreement was signed. However, Mr. Ringer does not allege he was present at the signing, but rather that his agent, Gary Berger, was present. Mr. Berger on this point states in his affidavit that,

"d) I have no present recollection of whether or not there was a formal closing of the GROPPER/POTASH–RINGER/SKEEN transaction, nor can I state with any degree of certainty where such closing took place if, in fact, there was a closing."

Thus the only statement by *Berger* as to where the agreement was signed is that he cannot remember. Furthermore, the only statement by Ringer as to the LaGuardia meeting is that "to the best of my recollection" all the negotiations took place in California. Based on these affidavits the Court finds the defendant's allegations as to where the events of this case occurred unconvincing. Therefore the Court finds that the LaGuardia meeting and the New York signing took place where the plaintiff alleges. The question then is whether those contacts are sufficient to find jurisdiction over the defendant in New York.

Plaintiff asserts jurisdiction over the defendant by way of New York's "long arm" statute, CPLR § 302(a)(1). Personal jurisdiction is found under that section over a non-domiciliary defendant "who in person or through an agent . . . transacts any business within the state." The constitutional basis for this statute has recently been discussed by this Court in the case of *Moser v. Boatman,* 392 F.Supp. 270 (E.D.N.

Y.1975), and does not need to be repeated here.

The leading New York cases interpreting § 302 are *Longines-Wittnauer Watch Co. Inc. v. Singer,* 15 N.Y.2d 443, 261 N.Y.S.2d 8, 209 N.E.2d 68, *cert. denied, sub nom., Estwing Manufacturing Co. Inc. v. Singer,* 382 U.S. 905, 86 S.Ct. 241, 15 L.Ed.2d 158 (1965), and *Parke-Bernet Galleries, Inc. v. Franklyn,* 26 N.Y.2d 13, 308 N.Y.S.2d 337, 256 N.E.2d 506 (1970). *See also Moser v. Boatman, supra.* In *Longines-Wittnauer* the Court of Appeals said that "a single transaction in New York, out of which the cause of action has arisen, may satisfy the requirement of transaction of business provision." *Longines-Wittnauer, supra,* 15 N.Y.2d at 450, 261 N.Y.S.2d 8, 18, 209 N.E.2d 68, 74–75. Thus it is possible that the defendant's presence at LaGuardia Airport was sufficient to grant jurisdiction in this case. *See Hi Fashion Wigs v. Hammond Advertising,* 32 N.Y.2d 583, 347 N.Y.S.2d 47, 300 N.E.2d 421 (1973).

However, we do not have to rest our decision on that ground as the *Parke-Bernet* case is almost directly in point. In that case the defendant from California called Parke-Bernet Galleries and through an employee of Parke-Bernet bought a painting at an auction. The Court said that it "is important to emphasize that one need not be physically present in order to be subject to the jurisdiction of our courts under CPLR 302 . . ." *Parket-Bernet, supra,* 26 N.Y.2d at 17, 308 N.Y.S.2d 337, 340, 256 N.E.2d 506, 508. In that case the New York Court of Appeals found jurisdiction over the defendant through the activities of his agent, even though the defendant himself was never present in New York.

■ In this case the defendant was allegedly present at least once in New York negotiating the sale price of the stock, and further the defendant's agent, Gary Berger, signed the agreement that is the source of this controversy in New York. Therefore, on the basis of the facts alleged by the plaintiff we find that this Court has jurisdiction over the defendant and so his motion for dismissal is denied.

The defendant also moves to transfer the venue of this action under 28 U.S.C. § 1404(a) which says that for "the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

■ The defendant raises two justifications for the transfer. First, he argues that he has brought an action in the District Court in California against Clyde Skeen alleging that if he is liable to the plaintiff, Mr. Skeen is liable to him. Further, the defendant argues that jurisdiction cannot be had over Mr. Skeen in the Eastern District of New York and therefore the case should be transferred to California so that the cases can be consolidated. The Court does not agree. Mr. Skeen's alleged activities in New York were identical to Mr. Ringer's. Therefore as we have found jurisdiction over the defendant, there would also be jurisdiction over Mr. Skeen and thus the defendant could implead him here. The defendant argues, however, that he is not suing Mr. Skeen under the same activities as the plaintiff is suing him, but is rather suing Skeen under a subsequent indemnity agreement signed between the defendant and Skeen in California in 1972. It is the defendant's argument that Mr. Skeen's activities as related to the indemnity agreement were unconnected with New York and therefore there would be no jurisdiction over Mr. Skeen in New York. The defendant cannot have it both ways. Either the indemnity agreement is related to the original contract and so there would be jurisdiction over Skeen in New York or the indemnity agreement is unrelated to the original contract and therefore it is no justification for transfer of venue. In any case, it would be unfair to allow the defendant to justify a transfer in venue based on his and Mr. Skeen's actions after the contract was signed with the plaintiff.

Secondly, the defendant bases his request for transfer on the grounds that he will call two witnesses, namely, Gary Berger and Patti Zimmerman, the defendant's administrative assistant. As to Patti Zimmerman,

her relevance to the action is not clear and so her convenience should not be a significant consideration. As to Mr. Berger, his testimony will be relevant as he signed the agreement in New York for the defendant. The defendant alleges that Berger is a resident of California and is not amenable to service in this action. This is not clear as Mr. Berger has been in New York at least once and was Vice President of IWE, a New York corporation.

Furthermore, the plaintiff in opposition to this motion says he will call at least four witnesses all of whom are residents of New York. These witnesses include Morry Gropper who was the plaintiff's partner and who witnessed most of the occurrences in this action.

As this Court has noted in *Computer Operations, Inc. v. Digital Equipment Rental Corp.*, 387 F.Supp. 8 (E.D.N.Y.1975), the plaintiff's choice of forum should not be disturbed unless the balance of convenience favors the defendant. On the facts alleged here we cannot make such a finding and so defendant's motion to transfer the venue of this action is denied.

SO ORDERED.