**CT CHEMICAL (USA), INC., Plaintiff,**

v.

**HORIZONS INTERNATIONAL, INC., Defendant.**

**No. 85 Civ. 1901 (RWS).**

United States District Court, S.D. New York.

June 28, 1985.

Fried, Frank, Harris, Shriver & Jacobson, P.C., New York City, for plaintiff; Stephen Lew, New York City, of counsel.

Fiddler & Levine, New York City, Cooper, Epstein & Hurewitz, Beverly Hills, Cal., Alan H. Levine, New York City, Michael A. Painter, Beverly Hills, Cal., of counsel.

## OPINION

SWEET, District Judge.

Defendant Horizons International, Inc. ("Horizons") has moved to dismiss this diversity-based action pursuant to Fed.R. Civ.P. 12(b)(2) for failure of personal jurisdiction. Plaintiff CT Chemicals ("CT") alleges jurisdiction pursuant to N.Y. CPLR § 302(a)(1). In the alternative, Horizons has moved to transfer this case pursuant to 28 U.S.C. § 1406. The motions are denied.

### Facts

Most of the facts relating to Horizons' contacts with New York are undisputed. Where there is disagreement, in the absence of an evidentiary hearing on the jurisdictional issue, the pleadings and affidavits are to be interpreted in the light most favorable to the plaintiff. *Hoffritz For Cutlery, Inc. v. Amajac,* 763 F.2d 55 (2d Cir.1985) (Slip Op.). The case arises from the alleged repudiation and breach by Horizons of two contracts to purchase 1,680,000 gallons of the chemical toluene. CT claims damages of $177,317.12.

Horizons, a California corporation with its principal place of business there, is a trading company which deals primarily in petrochemicals and plastics, which it buys in order to resell to third parties. Horizons does not have offices in New York, does not pay taxes in New York, does not have a bank account in New York, and does not have a telephone listing in New York. CT is a Delaware corporation with its principal place of business at 150 East 58th Street, New York, New York.

The transaction at issue here was initiated by Howard Mercer ("Mercer"), one of the principals of Horizons, when he telephoned CT's New York offices in the spring of 1984 and indicated an interest in purchasing toluene from CT. Several phone conversations ensued between CT pers nnel in New York and Mercer in California. On June 7, 1984, in a telephone conversation with a CT representative in New York, Mercer agreed to purchase 840,-000 gallons of toluene from CT. The terms of the contract were defined in CT's sales confirmation, mailed from New York to California, dated June 11, 1984.

On June 11, 1984, in a separate telephone conversation with a CT sales representative in New York, Mercer agreed to purchase an additional 840,000 gallons of toluene from CT. The terms of this second con-

tract were defined in CT's sales confirmation, mailed June 12, 1984 from New York.

Mercer was in New York on June 25, 1984, according to him, in order to visit his ill stepfather. While in New York, he telephoned Hertwig Benedict, President of CT, and suggested they have lunch. At lunch, Mercer agreed that Horizons would use its best efforts to take possession of the toluene before July 15 and that if it were unable to do so, CT would invoice Horizons for the resulting storage costs. On July 16, 1984 CT sent two invoices totalling $1,797,395.30, both specifying that payment was due by August 14, 1984. Horizons refused to take possession or make payments by that date.

## Discussion

■ In the absence of an evidentiary hearing on a motion to dismiss for a failure of personal jurisdiction, a plaintiff need make only a prima facie showing that jurisdiction exists. Further, factual disputes must be resolved in favor of the plaintiff. *Hoffritz For Cutlery, supra.* In this action, CT alleges that jurisdiction exists pursuant to CPLR § 302(a)(1), which states:

As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any nondomiciliary, or his executor or administrator, who in person or through an agent:

1. transacts any business within the state or contracts anywhere to supply goods or services in the state ...

A defendant over whom jurisdiction is based on § 302(a)(1) may be sued only on causes of action arising from the specific transaction of business in New York. In this action there is no dispute that the cause arises from the contracts negotiated telephonically and perhaps at the lunch meeting on June 25, 1984. The dispute that must be resolved is whether the contracts constitute business transacted in New York in a manner sufficient to provide jurisdiction under § 302(a)(1).

■ Both parties recognized, in their papers and at oral argument, that *Parke-Bernet Galleries, Inc. v. Franklyn*, 26 N.Y.2d 13, 308 N.Y.S.2d 337, 256 N.E.2d 506 (Ct. App.1970) provides the greatest guidance. In *Parke-Bernet*, Dr. Robert Franklyn, who lived in California, received a catalogue from Parke-Bernet, an art auction house, describing paintings to be sold at an auction in New York. Franklyn, by mail, expressed his interest in several of the paintings, and the day prior to the auction Franklyn called Parke-Bernet and requested that telephone communications be kept open during the bidding on the particular painting. Such a telephone link was maintained during the bidding, and during the auction Franklyn communicated with an employee of Parke-Bernet, being informed of competing bids and communicating his own bids. Through this process, Franklyn purchased two paintings. When Franklyn failed to pay the combined $96,000 purchase price, Parke-Bernet sued in New York.

The Court of Appeals found jurisdiction under § 302(a)(1), reasoning that physical presence was not a prerequisite to being subject to jurisdiction, because "particularly in this day of long-range communications, one can engage in extensive purposeful activity here without ever actually setting foot in the State." *Id.*, 308 N.Y.S.2d, at 340, 256 N.E.2d at 509. The Court found that the case fell between the most obvious facts calling for the exercise of jurisdiction—physical presence in the state at the time of formation of the contract—and facts which would not justify exercising jurisdiction—"where the defendant merely telephones a single order from outside the state." *Id.* The Court concluded that Franklyn's personal involvement amounted to projecting himself into the auction room in such a way that he " 'purposefully' availed himself 'of the privilege of conducting activities' within New York and thereby 'invok[ed] the benefits and protections of its laws.' " *Id.* at 341, 256 N.E.2d at 510, (citations omitted). As an alternative basis for finding jurisdiction, the Court held that the Parke-Bernet employee with whom Franklyn communicated directly could be viewed as Franklyn's

agent. The telephone and mail contacts, however, were independently sufficient as a basis for jurisdiction. *See also L.F. Rothschild v. Thompson*, 78 A.D.2d 795, 433 N.Y.S.2d 6 (App.Div. 1st Dept.1980) (finding jurisdiction on basis of telephone and mail contacts which amounted to "purposeful activity within the state.")

The facts of this case, viewing the telephone and mail contacts alone, are similar to those in *Parke-Bernet*. Horizons' contacts demonstrate purposeful contact with New York to the same extent as did those of Franklyn. Each, through a course of communication via the mails and telephone, formed contracts with New York entities. Just as Franklyn effectively injected himself into the auction, so Horizons injected itself into the New York market for toluene in a manner that demonstrated the purposeful availment of the privilege of conducting activities in New York.

Further, the lunch meeting, even viewed in the light presented by Mercer, constitutes a further transaction of business relating to the contract. Although Mercer may have been motivated by purely social considerations in arranging the luncheon, he concedes that a substantive discussion relating to the timing of delivery and the costs of storage did take place. Further, an agreement that Horizons would use its best efforts to take possession by July 15 was reached. Viewing this meeting in the light most favorable to CT, as required by *Hoffritz for Cutlery, supra*, compels a finding that Horizons transacted sufficient business in New York to establish jurisdiction pursuant to § 302(a)(1).

 Horizons moves alternatively for a motion to transfer this case. Horizons bears the substantial burden of establishing that transferring this case is in the interest of justice, *PI, Inc. v. Valcour Imprinted Papers, Inc.*, 465 F.Supp. 1218 (S.D.N.Y.1979). Balancing the convenience of the parties and the ease of access to sources of proof, I conclude that Horizons has not made a substantial showing that convenience and the interests of justice are served by transferring this case.

**Conclusion**

The motions to dismiss for lack of personal jurisdiction and to transfer are denied. Discovery will be completed by August 21, 1985 and a joint pretrial order submitted by August 28, 1985.

**IT IS SO ORDERED.**