**Lawrence E. FIEDLER,**
**Plaintiff-Appellant,**

v.

**FIRST CITY NATIONAL BANK OF HOUSTON, Defendant-Appellee.**

**MERIDITH ORGANIZATION, INC.,**
**Plaintiff-Appellant,**

v.

**FIRST CITY NATIONAL BANK OF HOUSTON, Defendant-Appellee.**

Nos. 289, 395, Docket Nos.
86–7567, 86–7609.

United States Court of Appeals,
Second Circuit.

Argued Nov. 18, 1986.

Decided Dec. 17, 1986.

Joseph M. Weitzman, New York City (Mayer Morganroth, New York City, of counsel), for plaintiffs-appellants.

Ogden N. Lewis, New York City (Davis Polk & Wardwell, New York City, of counsel), for defendant-appellee.

Before LUMBARD, VAN GRAAFEILAND and PIERCE, Circuit Judges.

PER CURIAM:

These diversity actions, commenced separately in the Southern District of New York and consolidated for argument on appeal, were dismissed by Judge Robert W. Sweet on May 15, 1986. Judge Sweet held that plaintiffs Lawrence E. Fiedler and Meridith Organization, Inc. (Meridith) had failed to make a prima facie showing that New York had jurisdiction over defendant First City National Bank of Houston. We affirm.

In September 1980, the Bank, which has its principal place of business in Houston, Texas, made a $4.3 million loan to Superior/Tomasco-Inwood Greens Joint Venture to finance the development and construction of an apartment complex in Houston, Texas. Superior/Tomasco delivered to the Bank a promissory note, dated September 5, 1980, evidencing its indebtedness. In 1981, the Bank increased the loan to $4.63 million. In 1982, Meridith Oaks Limited, a Texas limited partnership in which Fiedler is a general partner, purchased the interest of Superior Homes (one of the two Texas corporations which formed Superior/Tomasco) in the joint venture. The new joint venture, now called Tomasco/Meridith-Inwood Greens Joint Venture, assumed the obligations of Superior/Tomasco, executing two new promissory notes in the amounts of $3.5 million and $1.5 million in favor of the Bank.

The $3.5 million note was secured by the guaranties of Fiedler, Meridith, Tomasco, Inc., and Don J. Tomasco. According to Meridith and Fiedler, the guaranty agreements resulted from negotiations consisting of three telephone calls between Fiedler and T.W. Imes, Jr., a vice president of the Bank who supervised the Tomasco/Meridith loan portfolio. In the first phone call, Imes asked Fiedler, who was in New York, to sign the guaranty forms that Imes was sending to him. The Bank then sent the guaranty forms to New York. After reviewing the guaranty forms, Fiedler telephoned Imes and stated that Meridith and he would contract only for secondary, and not primary, liability. The Bank then returned his call, agreeing to secondary liability and authorizing Fiedler to make the necessary physical modifications on the documents. Fiedler thereupon made the necessary changes in New York, signed the guaranty agreements in New York, had the corporate guaranty agreement attested to in New York, had both agreements notarized in New York, and then mailed the agreements back to Imes in Texas.

On July 1, 1985, the debt became due. It was not paid. On October 18, 1985, the Bank informed the maker and the guarantors of the loan, including Fiedler and Meridith, that if they did not cure the default by November 18, 1985, it intended to sue for payment. On November 13, 1985, Fiedler and Meridith filed separate suits in the Southern District of New York, both re-

questing declaratory judgments that they were only secondarily liable on the guaranties. Meanwhile, on November 19, 1985, the Bank filed suit in Harris County, Texas, naming the guarantors of the loan including Meridith and Fiedler as defendants. Fiedler and Meridith have asked the Texas state court to stay its proceedings pending the outcome of these actions.

The Bank moved in the Southern District of New York for dismissal of the complaints for lack of personal jurisdiction, or in the alternative for a transfer of the actions to the Southern District of Texas or for a stay pending resolution of the Texas state action and a parallel bankruptcy proceeding involving the joint venture. Fiedler and Meridith appeal from the district court's judgment, entered May 28, 1986, which dismissed their complaints.

New York law governs personal jurisdiction over nondomiciliaries in a diversity action. *Arrowsmith v. United Press International*, 320 F.2d 219, 223 (2d Cir.1963) (en banc). The New York long arm statute permits a court to "exercise personal jurisdiction over any nondomiciliary ... who ... transacts any business within the state or contracts anywhere to supply goods or services in the state...." CPLR § 302(a)(1). Judge Sweet dismissed the complaints because Fiedler and Meridith had failed to make a prima facie showing that jurisdiction was proper under the terms of that statute. *See Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir.1981). Fiedler and Meridith argue that the district court incorrectly applied the "totality of circumstances" test set forth in *Sterling National Bank & Trust Co. of New York v. Fidelity Mortgage Investors*, 510 F.2d 870, 873 (2d Cir. 1975). They claim that the district court erroneously considered the "unrelated facts and circumstances" of the underlying Texas real estate transaction when it should have been focusing on the "narrow factual context" of the guaranty agreements alone. We disagree.

In *Sterling* we stated that "[t]he proper inquiry in a case such as this is 'whether looking at "the totality of the defendant's activities within the forum", purposeful acts have been performed in New York' " sufficient to subject the defendant to the jurisdiction of the New York courts. 510 F.2d at 873 (citations omitted). Under this test, we must look at the totality of a defendant's contacts with the forum without regarding any single act as the "sovereign talisman" of jurisdiction.

Applying this test to the alleged facts, we note that the guaranties were part of an underlying Texas transaction, involving Texas property, with Texas law governing. We agree with the district court's conclusion that "the Bank's scant contacts with this jurisdiction—two telephone calls and one mailing into the state—cannot confer personal jurisdiction on this court." Fiedler and Meridith cite *Parke-Bernet Galleries, Inc. v. Franklyn*, 26 N.Y.2d 13, 308 N.Y.S.2d 337, 256 N.E.2d 506 (1970) (jurisdiction proper over a California resident who participated in a New York art auction via a telephone link with an agent of the auctioneer who then relayed defendant's bids) and *CT Chemical (USA), Inc. v. Horizons International, Inc.*, 106 F.R.D. 518 (S.D.N.Y.1985) (defendant established a telephonic course of dealing with the plaintiff-seller and travelled to New York to have lunch with the seller in order to discuss and negotiate the contract) to support their contention that the Bank's contacts were adequate to confer jurisdiction. As Judge Sweet noted in his well-reasoned opinion, these cases are not apposite because in both "the defendants had established a pattern of commercial dealings with each plaintiff centered in New York and used the telephonic link to this state as a means of projecting themselves into local commerce."

Instead, this case is closer to the "order solicitation" cases, which hold the telephone orders not involving visits or consultations in New York do not confer personal jurisdiction under § 302(a)(1). *See, e.g., M. Katz & Son Billiard Products, Inc. v. G. Correale & Sons, Inc.*, 20 N.Y.2d 903, 285 N.Y.S.2d 871, 232 N.E.2d 864 (1967). *Cf.*

*Parke-Bernet,* 26 N.Y.2d at 17, 308 N.Y. S.2d at 340–41, 256 N.E.2d at 508–09 (acknowledging that New York courts do not have jurisdiction "where defendant merely telephones a single order from outside the state"). As we have previously recognized, "New York courts have consistently refused to sustain § 302(a)(1) jurisdiction solely on the basis of defendant's communication from another locale with a party in New York." *Beacon Enterprises, Inc. v. Menzies,* 715 F.2d 757, 766 (2d Cir.1983). *See also Fox v. Boucher,* 794 F.2d 34 (2d Cir.1986); *Current Textiles v. AVA Industries, Inc.,* 624 F.Supp. 819, 821 (S.D.N.Y. 1985). Thus, jurisdiction cannot be premised solely upon the only contacts alleged here—two telephone calls and a mailing from Texas.

Affirmed.