## UNDER PAR ASSOCIATES, LLC *v.* WASH DEPOT A., INC., ET AL.

Superior Court          Judicial District of          File No. CV010453568S
                          New Haven

Memorandum filed December 11, 2001

*Parrett, Porto, Parese & Colwell,* for the plaintiff.

*Goldman, Gruder & Woods,* for the defendants.

BLUE, J. The motion now before the court presents a jurisdictional issue of apparent first impression in the Connecticut state courts. Does our long arm statute, General Statutes § 52-59b (a), incorporate a "fiduciary shield" doctrine, protecting an individual from jurisdiction if his dealings in the forum state were solely in a corporate capacity? Although the United States District Court for the District of Connecticut has answered this question in the affirmative, I find, after reviewing the relevant authorities, that the "fiduciary shield" doctrine has no place in Connecticut jurisprudence.

The jurisdictional facts, found after an evidentiary hearing conducted before the court, can be stated briefly. The corporate defendant, Wash Depot A., Inc. (Wash Depot A), is one of several wholly-owned subsidiaries of a separate corporation, Wash Depot Holdings, Inc. (Holdings). Holdings is a Delaware corporation with corporate headquarters in Massachusetts. Wash Depot A is a Georgia corporation operated out of Holdings' corporate headquarters. Wash Depot A has no paid employees. Like Holdings' other subsidiaries, it is managed by Holdings. The individual defendant, Gregory Anderson, a resident of New York, is the president and chief operating officer of Holdings. In that capacity he manages Wash Depot A at the corporate level. Anderson is not a stockholder of either Holdings or Wash Depot A.

In 1997, Wash Depot A leased real property in Meriden to operate a car wash. By April, 2001, Holdings was looking for an opportunity to sell the Meriden property. It eventually negotiated a sale with the plaintiff, Under Par Associates, LLC (Under Par). The negotiation occurred on April 30, 2001, in a telephone conversation between Anderson, who was calling from his home in New York, and Rick Perusse, the manager of Under Par, who was located in Connecticut. Under Par alleges in its complaint that Anderson and, through him, Wash

Depot A, made certain fraudulent representations in the course of that call. Because the issue now before the court is solely jurisdictional, the court expresses no view on the merits of Under Par's allegations.

On July 5, 2001, Under Par commenced this action against Wash Depot A and Anderson by service of process. An appearance was filed for both defendants on August 14, 2001. On August 22, 2001, Anderson filed the motion to dismiss now before the court. The motion contends that the action against Anderson should be dismissed for lack of jurisdiction and insufficiency of service of process. The motion was heard on November 13, 2001. It was submitted on posthearing briefs on December 4, 2001.

The motion to dismiss claims lack of personal jurisdiction only as to Anderson. No claim has been made that there is a lack of jurisdiction as to Wash Depot A. In addition, Anderson has neither briefed nor argued the claim in his motion that the service of process upon him was insufficient. That latter claim is deemed abandoned. The sole question is whether the court has personal jurisdiction over Anderson.

Connecticut's long arm statute, § 52-59b (a), is the brass ring that both parties wish to seize. Section 52-59b (a) provides in pertinent part that: "As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any nonresident individual . . . who in person or through an agent: (1) Transacts any business within the state; (2) commits a tortious act within the state . . . [or] (3) commits a tortious act outside the state causing injury to person or property within the state . . . ." Satisfaction of any of the statutory tests is sufficient to establish personal jurisdiction. Because the first— "transacting business"—test is satisfied here, it is

unnecessary to consider the application of the second and third—"tortious act"—tests.

"The statute does not define what the phrase 'transact any business' means, but in *Zartolas* [v. *Nisenfeld*, 184 Conn. 471, 474, 440 A.2d 179 (1981), the Supreme Court] construed it 'to embrace a single purposeful business transaction.' " *Rosenblit* v. *Danaher*, 206 Conn. 125, 138, 537 A.2d 145 (1988). *Zartolas* additionally points out that, "in enacting § 52-59b, the legislature used New York Civil Practice Law § 302 . . . as a model. . . . We therefore find pertinent the judicial interpretation given to that New York statute." (Citations omitted.) *Zartolas* v. *Nisenfeld*, supra, 474. It is, therefore, helpful to look to New York precedent on the subject.

Modern New York precedent establishes that "one need not be physically present in order to be subject to the jurisdiction of our courts under CPLR 302 for, particularly in this day of instant long-range communications, one can engage in extensive purposeful activity here without ever actually setting foot in the State." *Parke-Bernet Galleries, Inc.* v. *Franklyn*, 26 N.Y.2d 13, 17, 256 N.E.2d 506, 308 N.Y.S.2d 337 (1970) (*Parke-Bernet*). *Parke-Bernet* holds that where a defendant, although not actually present in the forum state, "was receiving and transmitting bids over an open telephone line and was an active participant in an auction held here"; id.; the "transacting business" test of CPLR § 302 was satisfied.

*Parke-Bernet* is roughly equivalent to the present case. This is well beyond "the situation where a defendant merely telephones a single order from outside the State . . . ." Id. Rather, Anderson, like the defendant in *Parke-Bernet*, actively participated in the business negotiation in the forum state. In acting as he did, "the defendant 'purposefully' availed himself 'of the privilege of conducting activities' within [the forum state] and

thereby '[invoked] the benefits and protections of its laws . . . .' " Id., 18, quoting *Hanson* v. *Denckla*, 357 U.S. 235, 253, 78 S. Ct. 1228, 2 L. Ed. 2d 1283 (1958).

Anderson does not seriously contest the court's analysis so far. His claim, rather, is that in spite of this analysis, he is protected by the "fiduciary shield doctrine." He contends that whatever business he conducted in Connecticut was solely in his capacity as an officer of the corporate defendant. Thus, he says, he "was merely furthering the corporation's interests" rather than his own.

Anderson's claim finds support in three decisions of the United States District Court for the District of Connecticut. In *Bross Utilities Service Corp.* v. *Aboubshait*, 489 F. Sup. 1366 (D. Conn.), aff'd without opinion, 646 F.2d 559 (2d Cir. 1980) (*Bross Utilities*), Cabranes, J., considered a lawsuit brought against both foreign corporations and their individual officers. After determining that Connecticut's long arm statute did not reach the conduct of the corporations, Cabranes, J., reasoned that: "Nothing in the record indicates that the individual defendants transacted any business other than through the corporations which they controlled. Accordingly, the court's conclusion that the plaintiff's claims against the corporate defendants did not arise out of the transaction by them of any business in Connecticut compels a finding that the same claims against the individual defendants similarly do not confer in personam jurisdiction on this court under Conn. Gen. Stat. § 52-59b (a) (1)." Id., 1373.

Eginton, J., was confronted with a similar situation in *Hagar* v. *Zaidman*, 797 F. Sup. 132 (D. Conn. 1992). A California corporation and its president were sued for alleged contractual violations. Eginton, J., held that

the corporation had not "transacted business" in Connecticut. Under these circumstances, he found *Bross Utilities* to be "dispositive of whether [the president] transacted business under § 52-59b (a) (1)." Id., 137.

Eginton, J., again faced a similar situation in *Adams* v. *Wex*, 56 F. Sup. 2d 227 (D. Conn. 1999), but conducted his analysis in a slightly different way. Once again, both a foreign corporation and its officer were sued, and once again Eginton, J., found no Connecticut jurisdiction as to either the corporate or individual defendants. This time, however, Eginton, J., considered the court's jurisdiction over the individual defendant *first*. (The question of jurisdiction over the corporate defendant was not considered until later in the opinion.) In his analysis of the individual defendant, Eginton, J., stated that, "personal jurisdiction may not be asserted over the president of a corporation based on the president's transaction of business in Connecticut where the president did not transact any business other than through the corporation, as in the present case." Id., 230. In support of the proposition just quoted, the court cited *Hagar* and *Bross Utilities* without further elaboration.

In light of their facts, *Adams*, *Hagar* and *Bross Utilities* stand for a common, unremarkable proposition. Where a corporation has not "transacted business" in Connecticut and an officer of that corporation has not transacted any business other than through the corporation, the court has no more jurisdiction over the individual than it does over the corporation. If the court lacks jurisdiction over the corporation, in these circumstances, it naturally follows that it also lacks jurisdiction over the officer. If the facts pertaining to the corporation and the officer are coterminous, an insufficiency of jurisdictional facts with respect to the corporation would, as a matter of logic, necessarily involve an insufficiency of jurisdictional facts with respect to the officer.

But what if the corporation *has* transacted business in Connecticut? What is the status of its officer then? None of the cases just cited, properly understood, stand for the proposition advanced by Anderson, that the court can have jurisdiction over the corporation but simultaneously lack jurisdiction over the officer solely because he acted in his corporate capacity. *Adams* confuses the issue by putting the cart before the horse and considering the case of the officer before the case of the corporation. Given its facts, however, *Adams* is far too thin a reed to support Anderson's claim here. That contention must be justified, if at all, by an independent analysis.

As it happens, a substantial body of jurisprudence on the "fiduciary shield" doctrine exists. The numerous authorities—squadrons of citations can be mustered in support of either side of the debate—are gathered in S. Larsen, annot., Validity, Construction, and Application of "Fiduciary Shield" Doctrine—Modern Cases, 79 A.L.R.5th 587 (2000), and there is no need to repeat that compilation here. The judicial focus must be on the doctrine's analytical underpinnings.

"This doctrine of 'fiduciary shield' . . . emerged 'with little notice and with no critical examination' as a novel principle by way of dicta in a series of decisions of the New York state and federal courts in the mid-sixties just as a more liberal and relaxed rule was developing in federal courts in favor of the application of state long-arm statutes themselves." *Columbia Briargate Co.* v. *First National Bank*, 713 F.2d 1052, 1055 (4th Cir. 1983), cert. denied, 465 U.S. 1007, 104 S. Ct. 1001, 79 L. Ed. 2d 233 (1984). The doctrine was initially considered to be a substantive requirement of New York law. *United States* v. *Montreal Trust Co.*, 358 F.2d 239, 243 (2d Cir.), cert. denied, 384 U.S. 919, 86 S. Ct. 1366, 16 L. Ed. 2d 440 (1966). In 1988, however, the New York Court of Appeals rejected the doctrine in a well

reasoned decision. *Kreutter* v. *McFadden Oil Corp.*, 71 N.Y.2d 460, 522 N.E.2d 40, 527 N.Y.S.2d 195 (1988).

*Kreutter* explains that the "fiduciary shield" doctrine "is based upon the notion that it is unfair to subject a corporate employee personally to suit in a foreign jurisdiction when his only contacts with that jurisdiction have been undertaken on behalf of his corporate employer." Id., 467–68. The doctrine, however, finds no support in the long arm statute itself. "Nothing in the statute's language or the legislative history relating to it suggests that the Legislature intended to accord any special treatment to fiduciaries acting on behalf of a corporation or to insulate them from long arm jurisdiction for acts performed in a corporate capacity." Id., 470.

"Nor" *Kreutter* reasons, "is the rule necessary as a matter of fairness." Id. "The equitable concerns which motivated development of the doctrine are amply protected by constitutional due process requisites which guarantee that jurisdiction over a nonresident will be sustained only when the demand for his presence is reasonable and consistent with notions of ' "fair play and substantial justice" ' . . . *International Shoe Co.* v. *Washington*, 326 U.S. 310, 316 [66 S. Ct. 154, 90 L. Ed. 2d 95 (1945)]." *Kreutter* v. *McFadden Oil Corp.*, supra, 71 N.Y.2d 470.

Finally, *Kreutter* explains, the "fiduciary shield" doctrine is undesirable "as a matter of public policy." Id., 471. It unfairly prejudices "plaintiffs who seek relief against defendants conducting affairs in this State." Id. The unfairness of the doctrine is exemplified by the numerous exceptions created along the way by the courts adopting it. "That the application of this purportedly equitable rule has required the courts to develop so many exceptions to it to avoid inequitable results suggests that the foundation of the rule is unsound, or at a minimum, that the rule is unworkable." Id., 472.

*Kreutter* is important not only for its lucid policy analysis but because it interprets the very New York long arm statute that the Connecticut legislature used as a model for the text of § 52-59b. *Zartolas* v. *Nisenfeld,* supra, 184 Conn. 474. The judicial interpretation given to the New York statute by New York's highest court is, consequently, especially pertinent. Id. *Kreutter's* analysis and authority leads this court to conclude that the "fiduciary shield" doctrine finds no place in the text or underlying policy of § 52-59b.

Anderson next argues that the application of Connecticut's long arm statute to him "would be inconsistent with constitutional principles of due process." No authority is cited in support of this contention. His argument has been effectively answered by the Supreme Court of the United States, which has emphatically rejected automatic jurisdictional immunity for corporate agents. In *Keeton* v. *Hustler Magazine, Inc.*, 465 U.S. 770, 104 S. Ct. 1473, 79 L. Ed. 2d 790 (1984), the court considered a libel action brought against the named defendant, an Ohio corporation, and its owner, the well-known publisher Larry Flynt, in the United States District Court for the District of New Hampshire. The court found that jurisdiction could be constitutionally asserted against the named defendant. With respect to Flynt, the court rejected "the suggestion that employees who act in their official capacity are somehow shielded from suit in their individual capacity." Id., 781 n.13; see *Calder* v. *Jones,* 465 U.S. 783, 789–90, 104 S. Ct. 1482, 79 L. Ed. 2d 804 (1984). Rather, "[e]ach defendant's contacts with the forum State must be assessed individually." *Keeton* v. *Hustler Magazine, Inc.*, supra, 781 n.13. The District Court's jurisdiction over Flynt thus turned on his contact with the forum state and not on his corporate capacity.

A similar analysis applies to Anderson in the present case. The long arm statute applies to him because he

was transacting business in Connecticut. The plaintiff's demand for his presence in a Connecticut judicial forum is reasonable and consistent with notions of "fair play and substantial justice." Anderson was the president and chief operating officer of a corporation transacting business in Connecticut. He himself effectively transacted business in Connecticut in his April 30, 2001 telephone negotiation with Perusse. Although there is no evidence that Anderson gained any direct benefit from the negotiation in question, *Kreutter* pertinently observes that, "rarely, if ever, does a corporate agent not derive some benefit from acting on behalf of his principal." *Kreutter* v. *McFadden Oil Corp.*, supra, 71 N.Y.2d 472.

Under these circumstances, a Connecticut court's exercise of jurisdiction over Anderson is not unfair. This conclusion is reinforced by the nature of the most likely trial scenario. The court's jurisdiction over the corporate defendant, Wash Depot A, is unquestioned. Anderson would undoubtedly be a witness in any trial of Under Par's case against Wash Depot A and would have to come to Connecticut for that purpose. (Indeed, Anderson uncomplainingly traveled to Connecticut for the purpose of giving testimony on his motion to dismiss.) "That being so," as *Kreutter* notes, "the inconvenience he faces if made a party to the suit individually is minimal and, as a result, notions of fairness do not require us to shield him from the reach of the long arm statute." Id., 471.

The motion to dismiss is denied.