**Michael David NEWBRO, Plaintiff,**

v.

**Lance FREED, Judith Fisher Freed, Freed Living Trust, Debbie Haggerty, and Does 1 to 10, Defendants.**

No. 03 Civ. 10308(PKC).

United States District Court, S.D. New York.

Sept. 8, 2004.

Anthony Paduano, Leonard Weintraub, Paduano & Weintraub, L.L.P., New York, NY, for plaintiff.

Leonard Steiner, Steiner & Libo, Beverly Hills, CA, for defendant.

## MEMORANDUM AND ORDER

CASTEL, District Judge.

This is a diversity action arising out of a series of transactions conducted by non-parties Todd Eberhard and Eberhard Investment Advisers ("Eberhard"). The defendants Lance and Judith Freed ("Freeds") previously moved pursuant to Rule 12(b)(2), Fed.R.Civ.P., to dismiss this action for lack of personal jurisdiction. I determined that under New York's long-arm provision, CPLR 302(a)(1), the plaintiff had raised non-frivolous contentions that there was a basis for personal jurisdiction. *Newbro v. Freed*, 2004 WL 691392, at *4 (S.D.N.Y. March 31, 2004). I denied the Freeds' motion without prejudice, and permitted the parties to engage in discovery for a brief period limited to the jurisdictional issue. *Id.* I set a hearing on the issue of personal jurisdiction for September 1, 2004, affording each side the opportunity to present live testimony. (Order of June 30, 2004). At the September 1 hearing, the parties elected to proceed on the basis of the pleadings, affidavits, documentary evidence and deposition testimony.

Plaintiff, a resident of Nevada, alleges that the Freeds, who are California residents, benefited from fraudulent transfers made by Eberhard into their account. (Complaint ¶¶ 2, 6, 14) In Ponzi-like fashion, Eberhard is alleged to have covered the Freeds' losses with Newbro's money. Newbro alleges that on July 25, 2001, Eberhard transferred $1,000,000 to an account maintained by the Freeds, and that on the same date, Eberhard also transferred $120,000 to a separate account maintained by Judith Freed. (Complaint ¶¶ 16–17) Moreover, he alleges that "the Freeds knew that Eberhard had engaged in wrongdoing at or before that time and demanded that money be paid and/or returned to them." (Complaint ¶ 14) Newbro states that he never authorized account transfers to the Freeds, and that they have failed to return any money to him. (Complaint ¶¶ 21, 24) The Complaint asserts claims against the Freeds for (1) unjust enrichment, (2) fraud and (3) conversion. (Complaint ¶¶ 25–29, 34–39, 45–50)

To determine whether there is a basis for personal jurisdiction, the Court first looks to the forum state's law. *Whit-*

aker v. American Telecasting, Inc., 261 F.3d 196, 208 (2d Cir.2001). New York's long arm statute, CPLR 302(a)(1), provides in relevant part:

> As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any nondomiciliary, or his executor or administrator, who in person or through an agent: 1. transacts any business within the state or contracts anywhere to supply goods or services in the state ...

(McKinney's 2001) To maintain personal jurisdiction over a nondomiciliary defendant under this provision, the defendant must transact business in New York, and the claim against the defendant must arise out of the underlying business activity. *Agency Rent A Car Systems, Inc. v. Grand Rent A Car Corp.*, 98 F.3d 25, 29 (2d Cir.1996). As set forth by the Court of Appeals in *McGowan v. Smith*, 52 N.Y.2d 268, 272, 437 N.Y.S.2d 643, 645, 419 N.E.2d 321, 323 (1981), a suit against a nondomiciliary arises under CPLR 302(a)(1) if there exists an "articulable nexus" between the transacted business and the cause of action on which suit is brought. "[O]ne transaction in New York is sufficient to invoke jurisdiction, even though the defendant never enters New York, so long as the defendant's activities here were purposeful and there is a substantial relationship between the transaction and the claim asserted." *Kreutter v. McFadden Oil Corp.*, 71 N.Y.2d 460, 467, 522 N.E.2d 40, 43, 527 N.Y.S.2d 195, 198–99 (1988). Section 302(a)(1) establishes a basis for personal jurisdiction over nonresidents who have "purposefully availed [themselves] of the privilege of conducting activities within New York and thereby invoked the benefits and protections of its laws ..." *Parke–Bernet Galleries v. Franklyn*, 26 N.Y.2d 13, 18, 308 N.Y.S.2d 337, 341, 256 N.E.2d 506, 508–09 (1970) (quotation marks omitted).

In addition to satisfying CPLR 302(a)(1), the exercise of jurisdiction must satisfy due process. Due process "requires that a defendant have enough minimum contacts with the forum state so that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *PDK Labs., Inc. v. Friedlander*, 103 F.3d 1105, 1110 (2d Cir. 1997) (quoting *International Shoe v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)). Due process is satisfied if the Freeds purposely and sufficiently availed themselves of the privileges of conducting business in New York, so that it would be reasonable to anticipate being subject to suit in New York. *See id.* at 1110–11.

If challenged, the party asserting jurisdiction must show by a preponderance of the evidence at trial or an evidentiary hearing that there is a basis for personal jurisdiction over the defendant. *Atlantic Mutual Ins. Co. v. M/V Humacao*, 169 F.Supp.2d 211, 214 (S.D.N.Y. 2001). Because a motion to dismiss pursuant to Rule 12(b)(2) based on lack of personal jurisdiction is "inherently a matter requiring the resolution of factual issues outside of the pleadings ... all pertinent documentation submitted by the parties may be considered in deciding the motion." *St. Paul Fire and Marine Ins. Co. v. Eliahu Ins. Co.*, 1997 WL 357989, at *1 (S.D.N.Y. June 26, 1997) (quotation marks omitted), *aff'd*, 152 F.3d 920, 1998 WL 385976 (2d Cir.1998) (table). Where "the parties have conducted extensive discovery regarding the defendants' contacts with the forum state, but no evidentiary hearing has been held—the plaintiff's prima facie showing, necessary to defeat a jurisdiction testing motion, must include an averment of facts that, if credited by [the ultimate trier of fact], would suffice to establish jurisdiction over the defendant." *Bank*

*Brussels Lambert v. Fiddler Gonzalez & Rodriguez,* 171 F.3d 779, 784 (2d Cir.1999) (quotation marks omitted).

▮ Newbro has come forward with evidence of actions taken by the Freeds that he maintains establish personal jurisdiction over them. It includes evidence, *inter alia,* that: (1) the Freeds maintained 13 brokerage accounts, each of which included a New York address and was overseen by Eberhard, (2) the opening document for one of the Freeds' accounts was faxed from New York, (3) the Freeds made "numerous" calls to Eberhard's New York office and sent Eberhard at least eleven pieces of correspondence, sometimes for the purpose of selling securities, (4) the Freeds requested that Eberhard transfer $1,000,000 from the Freed Living Trust to the Freeds' bank account shortly after that same amount was transferred to the Living Trust account, (5) the Freeds received multiple letters and facsimiles from the Eberhard and (6) the Freeds designated an Eberhard employee as their contact as regards to certain securities in their accounts. (Weintraub Decl. ¶ 4)

Newbro also directs the Court to four visits that Judith Freed made to Eberhard's New York office, and two by Lance Freed. In June or August of 2000, Lance and Judith Freed together visited Eberhard's New York office for approximately 45 minutes in order to accompany Judith's father for a meeting. (L. Freed Aug. 3 Dep. at 95–96) On February 7, 2000, Judith Freed made a separate visit to Eberhard's New York office, in which she accompanied a friend who was giving Eberhard a gift. (J. Freed Dep. at 12–14) It is unclear from her deposition testimony whether Judith Freed recalled meeting with Eberhard in New York in June 2000, though she acknowledge attending the above-mentioned August 2000 meeting with her father, Eberhard and Lance Freed. (J. Freed Dep. at 32–33) In October 2000, she again met with Eberhard in New York, accompanied by Dr. Ava Shamban, a Santa Monica dermatologist interested in making an investment. (J. Freed Dep. at 57–58)

At bottom, the Freeds' maintenance of an account with Eberhard is the transaction of business out of which Newbro's claims arise. Putting aside whether Newbro's complaint states a claim upon which relief can be granted,[1] Lance Freed's trip to New York was an important part of a chain of events that led to Eberhard's decision to cover his tracks by transferring Newbro's money to the Freeds.

In April 2001, Lance Freed and an accountant met with Eberhard in New York to discuss "a discrepancy" in a trust under Judith Freed's name. (L. Freed Aug. 3 Dep. at 117–19) The meeting lasted for "[a] couple of hours," during which Lance Freed questioned Eberhard while Freed's accountant made notes. (L. Freed Aug. 3 Dep. at 119–20) Freed was particularly concerned that the amount of money reported in his client report from Eberhard differed from reports generated by Clearing Services of America. (L. Freed Aug. 3 Dep. at 120) They also conversed about a bond crisis in California and its implication for the Freeds' finances. (L. Freed Aug. 3 Dep. at 120)

---

**1.** In their written submissions and at oral argument, the Freeds strongly contest any suggestion of wrong-doing on their part. Indeed, the Complaint does not claim any venality on the Freeds' part, but asserts that eventually "the Freeds knew that Eberhard had engaged in wrongdoing...." (Complaint ¶ 14) While it is entirely possible that the Freeds are innocent victims, such a determination does not bear on whether this Court may exercise personal jurisdiction over them. *See* V. Alexander, *Practice Commentaries, CPLR 302,* at C302:5 (McKinney's 2001) ("For jurisdictional purposes, it should suffice that the complaint states a colorable cause of action.")

The Freeds sent letters to Eberhard in New York regarding anomalies in their account with him. A memorandum dated April 25, 2001 from Mike Gordon, the Freeds' accountant to Eberhard discusses a $1,000,000 loss of value in the Freeds' account. (Weintraub Decl. Ex I) On July 20, 2001, Lance Freed contacted Eberhard by facsimile and requested that he halt all activity in the Freeds' accounts. (Weintraub Decl. Ex I) In a letter dated July 26, 2001, the Freeds directed Eberhard to wire $1,000,000 in funds into their account at Pacific Century Bank. (Weintraub Decl. Ex. I) The July 26 letter is on the letterhead of Lance Freed, as president of Rondor Music International, and is addressed to Eberhard in New York. (Weintraub Decl. Ex. I) The letter is dated (and apparently was faxed) one day after July 25, 2001, the date that the Complaint identifies as when Eberhard arranged the $1.12–million transfer from Newbro's account to the Freeds.

The Freeds' contacts with New York satisfy the "transacts any business" portion of CPLR 301(a)(1). The Freeds voluntarily chose Eberhard, who they knew to be located in New York, to be the broker on their account. When the Freeds became insecure as to Eberhard's performance, Lance Freed traveled to New York to meet with him. There is an articulable nexus between the Freeds' New York contacts and the underlying claims in this litigation. The alleged wrongdoing in this action arose out of Eberhard's management over the Freeds' account. The unjust enrichment claim does not purport to allege guilty knowledge on the part of the Freeds but purports to arise out of a transfer by Eberhard from Newbro's account to Freed's account. This transfer, in turn, arose from a chain of events which included Lance Freed's New York visit in April.

In *Picard v. Elbaum,* 707 F.Supp. 144 (S.D.N.Y.1989), a case with allegations similar to those brought here, Chief Judge Mukasey ruled that New York jurisdiction rested over nonresident defendants who, for two years, maintained an investment account with a New York broker and communicated with him on several occasions. In *Picard,* the defendant Elbaums were out-of-state investors serviced by a broker who wrongly diverted funds from their investment accounts. *See id.* at 145. Unlike the Freeds, who met with Eberhard in New York on multiple occasions, the Elbaums' sole face-to-face meeting with their broker occurred in Connecticut, with their other communications limited to telephone calls and five pieces of correspondence. *See id.* at 146. The broker diverted client funds for personal use, and shifted funds between investor accounts to conceal these diversion. *See id.* at 145.

The Elbaums uncovered this scheme at which point the broker paid them $35,216.47 as their "profit" on an initial $10,000 investment. *See id.* at 146. The estate of Elbaums' broker was placed in receivership for the purpose of reclaiming disbursed funds and providing recovery to defrauded investors. *See id.* at 145. The estate's receiver brought suit against the Elbaums for unjust enrichment and state statutory violations. *See id. Picard* found that there was a basis for personal jurisdiction over the Elbaums in New York. "Even though there is no allegation that defendants knew of [the broker's] scheme, they benefitted from his tortious activities here.... Moreover, defendants cannot benefit from the fraud [the broker] committed in not buying and selling the investments when, in fact, they materially benefitted from the illegal scheme." *Id.* at 149. *Cf. Bluestone Capital Partners, L.P. v. MGR Funds Ltd.,* 1999 WL 322658, at *1 (S.D.N.Y. May 20, 1999) (nondomiciliary contacts with New York sufficient to con-

fer jurisdiction based on opening investment account and conducting securities transactions in New York); *Triad Securities Corp. v. Manufacturers Indemnity & Ins. Co. of America,* 1994 WL 330395, at *4 (S.D.N.Y. July 8, 1994) (finding New York jurisdiction over nonresident defendant based on year-long maintenance of New York securities account, telephone calls to New York plaintiff, and stock transactions ordered through plaintiff). *Picard,* and similar cases finding personal jurisdiction, differ from *United Computer Capital Corp. v. Secure Products, L.P.,* 218 F.Supp.2d 273, 276 (N.D.N.Y.2002), which found no personal jurisdiction over a defendant in a breach of contract action in which the contract was negotiated and executed in New Jersey, did not indicate performance in New York, and provided that New Jersey law governed.

I find *Picard'*s rationale persuasive, and applicable to the Freeds. True, in *Picard* the Elbaums' broker had wrongly reallocated funds from New York residents, giving New York an interest in their recoupment. *Picard,* 707 F.Supp. at 149. However, based on the two-year duration of the Freeds' account with Eberhard, their face-to-face visits with Eberhard, their substantial and ongoing communications with Eberhard, and the fact that the alleged misconduct of a New York broker lies at the heart of this action, I find that there is an articulable and substantial nexus between the Freeds' New York transactions and the cause of action alleged here. To the extent that the Freeds were unjustly enriched by Eberhard's conduct, their enrichment and Newbro's loss occurred solely from actions taken in New York.

■■■■ Lastly, jurisdiction over the Freeds comports with the due process requirements set forth in *International Shoe.* "Ordinarily ... if jurisdiction is proper under the CPLR, due process will

be satisfied because CPLR § 302 does not reach as far as the constitution permits." *Topps Co. v. Gerrit J. Verburg Co.,* 961 F.Supp. 88, 90 (S.D.N.Y.1997). "At bottom, the limitations on exertion of personal jurisdiction, as reflected in Section 302(a)(1)'s requirement of purposeful activity, exist to satisfy constitutional requirements of due process." *Abbacor, Inc. v. Miller,* 2001 WL 1006051, at *4 (S.D.N.Y. Aug.31, 2001). As noted above, the Freeds freely and knowingly granted Eberhard, located in New York, the authority to act as their broker. They conducted face-to-face meetings in his New York office and regularly communicated with Eberhard's New York office during the two-year life of their account with him. Such purposeful activities in New York constitute "minimum contacts ... such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice," *International Shoe,* 326 U.S. at 316, 66 S.Ct. 154, and show that the Freeds "purposefully availed [themselves] of the privilege of conducting business in New York and therefore [they] could reasonably anticipate being haled into court in this forum." *QRS 10–12(TX), Inc. v. Calcomp Technology, Inc.,* 1999 WL 476448, at *2 (S.D.N.Y. July 8, 1999).

■■■■ Because there is a basis for personal jurisdiction over the Freeds pursuant to CPLR 302(a)(1), I do not address Newbro's argument that Lance Freed is also subject to jurisdiction under CPLR 301. In addition, the Freeds urge that this action should be transferred to the Central District of California. Construing this argument as a motion brought pursuant to 28 U.S.C. § 1404(a), I conclude that because the center of the relationship between the Freeds and Eberhard, as well as between Newbro and Eberhard, was New York, the convenience of the witnesses and parties and the interest of justice will be

best served by allowing the action to remain in New York.

*Conclusion*

Newbro has made out a *prima facie* case that the Freeds are subject to personal jurisdiction in the state of New York. The Freeds' motion to dismiss for lack of personal jurisdiction is, therefore, DENIED.

SO ORDERED.