[797 NYS2d 439]

DEUTSCHE BANK SECURITIES, INC., Appellant, v MONTANA BOARD OF INVESTMENTS, Respondent.

First Department, June 14, 2005

## APPEARANCES OF COUNSEL

*Krantz & Berman LLP*, New York City (*Larry H. Krantz* and *Wendy Gerstmann* of counsel), for appellant.

*Olshan Grundman Frome Rosenzweig & Wolosky LLP*, New York City (*Herbert C. Ross, Jr.*, of counsel), for respondent.

## OPINION OF THE COURT

MARLOW, J.

Plaintiff Deutsche Bank Securities, Inc. is a Delaware corporation with its principal place of business in New York County. Defendant Montana Board of Investments is a governmental

agency organized under the laws of the State of Montana, for the purpose of investing public funds, with its principal place of business in Helena.

In this breach of contract action, we are asked to resolve three issues. First, as a threshold matter, whether this action must be dismissed, as defendant contends, because its New York activities, including the instant transaction, are insufficient to confer in personam jurisdiction on our state courts. Second, assuming jurisdiction, whether the complaint should be dismissed based on the doctrine of sovereign immunity and as a matter of comity. Finally, plaintiff asks this Court to dismiss the affirmative defenses attacking the court's exercise of jurisdiction, and, further, for partial summary judgment on the affirmative defense claiming plaintiff engaged in insider trading.

For the reasons which follow, we find that defendant's activities have subjected it to, and that it is not immune from, New York's jurisdiction and that plaintiff is entitled to partial summary judgment as to liability on its breach of contract claim.

On the morning of March 25, 2002, plaintiff's director in the Global Market Sales Division contacted defendant's senior investment officer-fixed income and offered to swap defendant's Pennzoil-Quaker State Company 2009 bonds for plaintiff's Toys R Us bonds or purchase from defendant the Pennzoil bonds at a certain price. The two communicated through the Bloomberg Messaging System which provides instant messaging between subscribers of the Bloomberg service for the purpose of negotiating and completing trades and dispensing other financial information. During the message exchanges, plaintiff's director was located in New York, and defendant's investment officer was located in Montana.

The two exchanged several messages that morning. Initially, defendant's investment officer indicated he was not interested in a swap, but plaintiff's director responded that the deal "looks good." Defendant's investment officer stated he wanted to hold onto the Pennzoil bonds, and plaintiff's director thanked him. Ten minutes later, defendant's investment officer sent a message to plaintiff's director and recommenced negotiations by asking whether the quoted price applied only to the swap or if the price would be the same for a cash purchase, and, defendant's investment officer stated that, if so, defendant had $15 million in Pennzoil bonds to sell plaintiff. After conferring with his trader, plaintiff's director responded that plaintiff would pay the agreed price: $5 million outright and plaintiff would be able

to trade the balance with one phone call. Defendant's investment officer countered with a request that plaintiff see if all $15 million could be sold at a specified price. After plaintiff's director was informed by his trader that there was a market for all $15 million, he sent defendant's investment officer a message saying that he was interested in purchasing all $15 million at a specific price with a specific settlement date. Defendant's investment officer agreed to the terms, and plaintiff's director sent a trade ticket and confirmation of the deal.

On the evening following the sale, it was publicly announced that Shell Oil entered an agreement to acquire Pennzoil, an event which could affect the value of the Pennzoil bonds. The next day, defendant's investment officer advised plaintiff's director that defendant was going to break the trade based on its investment officer's belief that plaintiff had traded on insider information. Plaintiff's director and trader claim that neither had any advance knowledge of the Shell/Pennzoil accord.

After defendant refused to honor the deal, plaintiff purchased the bonds elsewhere at an additional cost. Thereafter, in September 2002, plaintiff commenced this action for damages based on defendant's breach of the agreement to sell the Pennzoil bonds. Defendant answered and asserted affirmative defenses of, inter alia, lack of personal jurisdiction, sovereign immunity, and comity. In addition, defendant asserted an affirmative defense of insider information.

After some limited discovery, plaintiff moved for summary judgment as to liability and to dismiss defendant's affirmative defenses. Defendant cross-moved to dismiss the complaint based on lack of personal jurisdiction, sovereign immunity, and as a matter of comity. The motion court granted defendant's cross motion to dismiss the complaint for lack of personal jurisdiction and denied plaintiff's motion for partial summary judgment, implicitly denying plaintiff's motion to dismiss certain affirmative defenses.

■ We reverse. CPLR 302 (a) (1) permits a New York court to exercise personal jurisdiction over a nondomiciliary if the nondomiciliary conducts "purposeful activities" within the state and the claim against the nondomiciliary involves a transaction bearing a "substantial relationship" to those activities (*see Talbot v Johnson Newspaper Corp.*, 71 NY2d 827, 829 [1988]; *McGowan v Smith*, 52 NY2d 268, 272 [1981]). This "is a 'single act statute' and proof of one transaction in New York is sufficient to invoke jurisdiction, even though the defendant never

enters New York" as long as the requisite purposeful activities and the connection between the activities and the transaction are shown (*Kreutter v McFadden Oil Corp.*, 71 NY2d 460, 467 [1988]).

If a court determines that a defendant has transacted business pursuant to CPLR 302 (a) (1), then it must further ascertain whether the exercise of jurisdiction comports with due process (*see LaMarca v Pak-Mor Mfg. Co.*, 95 NY2d 210, 216 [2000]). Due process is not offended "[s]o long as a party avails itself of the benefits of the forum, has sufficient minimum contacts with it, and should reasonably expect to defend its actions there . . . even if not 'present' in that State" (*Kreutter*, 71 NY2d at 466, citing *McGee v International Life Ins. Co.*, 355 US 220 [1957]). In order to satisfy the minimum contacts requirement, it is essential that there be "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws" (*Hanson v Denckla*, 357 US 235, 253 [1958]).

While electronic communications, telephone calls or letters, in and of themselves, are generally not enough to establish jurisdiction (*see Liberatore v Calvino*, 293 AD2d 217, 220 [2002]; *Granat v Bochner*, 268 AD2d 365 [2000]), they may be sufficient if used by the defendant deliberately to project itself into business transactions occurring within New York State (*see Ehrlich-Bober & Co. v University of Houston*, 49 NY2d 574 [1980]; *Parke-Bernet Galleries v Franklyn*, 26 NY2d 13 [1970]; *Courtroom Tel. Network v Focus Media, Inc.*, 264 AD2d 351 [1999]).

We find under the particular facts of this case that defendant cannot evade transactional jurisdiction by simply claiming that it did not initiate the deal and that it was nowhere near New York when the deal was consummated. Instead, the facts show that defendant's investment officer is a sophisticated trader/investor who successfully negotiated the terms of a multimillion dollar bond transaction on behalf of his employer—a government entity which administers a unified investment program for public funds, public retirement systems, and state compensation insurance fund assets.

Although plaintiff originally initiated contact, defendant rejected the Pennzoil for Toys R Us swap and ended the negotiations. However, 10 minutes later, it was defendant's investment officer who called plaintiff's director and initiated negotiations anew. The record clearly shows that from this point

forward defendant's investment officer engaged in very purposeful activity by negotiating a cash deal instead of a swap. Defendant's officer's clear intent in this phase of the parties' negotiations was to complete the transaction, a goal achieved presumably to his satisfaction as the terms were not challenged at the time the deal was finalized or upon its confirmation.

Defendant is not a mere out-of-state consumer who made a few phone calls to his broker in New York to purchase stock and then reneged (*cf. L.F. Rothschild, Unterberg, Towbin v McTamney*, 89 AD2d 540 [1982], *affd* 59 NY2d 651 [1983]). Rather, negotiating major transactions such as the one at bar is a principal aspect of defendant's mission, i.e., part of its principal reason for being. Although the motion court agreed that the service agreement provided to defendant by Bloomberg was furnished to defendant in Montana, it is this service, regardless of where it is furnished, which enabled defendant to conduct this transaction, in addition to others, with traders in New York City. Indeed, "[a]s technological progress has increased the flow of commerce between States, the need for jurisdiction over nonresidents has undergone a similar increase" (*Hanson v Denckla*, 357 US at 250-251). This increase is justified by the recognition that "[w]ith the growth of national markets for commercial trade and technological advances in communication and travel systems, . . . an enormous volume of business may be transacted within a State without a party ever entering it" (*Kreutter*, 71 NY2d at 466). Thus, due process is not offended where a nondomiciliary "avails itself of the benefits of the forum, has sufficient minimum contacts with it, and should reasonably expect to defend its actions there" (*id.*).

We cannot countenance defendant's argument that merely because plaintiff initially approached defendant through modern technology—which enabled defendant to very purposefully conduct a $15 million deal in Montana with a bank in New York—defendant should be allowed to evade jurisdiction because that very technology can technically be viewed as only furnishing services in Montana. Here, the requisite contacts occurred through the Bloomberg Messaging System which allowed defendant very purposefully to negotiate a bond deal with this New York plaintiff without having actually to set foot in New York (*see Courtroom Tel. Network, supra* [nondomiciliary who takes advantage of New York's unique resources in the entertainment industry has purposefully availed itself of benefits of conducting business within state such that long-arm jurisdiction may be

invoked where cause of action arises from that transaction]; *Kulas v Adachi*, 1997 WL 256957, *7, 1997 US Dist LEXIS 6868, *20-21 [SD NY, May 16, 1997] [where communication clearly shows defendant intended to project itself into ongoing New York commerce, such as where defendant directly conducts securities transactions or market activity in New York by phone, do New York courts sustain jurisdiction based only on those communications]). Indeed, "[d]efendant was more than a passive buyer of a New York product or service; it played a 'crucial role' in creating the substance of the transaction" (*Courtroom Tel. Network*, 264 AD2d at 353). Accordingly, we find that defendant transacted business in this state and that the claim at bar arises from that business activity.

We also reject defendant's contention that, if it is subject to personal jurisdiction, it is nevertheless immune from suit in New York by dint of the doctrine of sovereign immunity and as a matter of comity. The Court of Appeals has recognized that New York has an "interest in maintaining and fostering its undisputed status as the preeminent commercial and financial nerve center of the Nation and the world" (*Ehrlich-Bober*, 49 NY2d at 581). Thus, there is "a very strong policy of assuring ready access to a forum for redress of injuries arising out of transactions spawned here" (*id.*). Accordingly, "where an action concerns a wholly commercial transaction centered in New York, and it is one of which the New York courts would otherwise properly have jurisdiction, they are not precluded from the exercise of that jurisdiction by an assertion of governmental immunity as a matter of comity" (*id.* at 582). This analysis is equally applicable to the facts at bar (*see also Morrison v Budget Rent A Car Sys., Inc.*, 230 AD2d 253 [1997]). Accordingly, the motion court should have dismissed defendant's affirmative defenses relating to sovereign immunity and comity.

Having dispensed with the threshold procedural issues, we now turn to the substantive question, whether plaintiff is entitled to partial summary judgment on the issue of liability. Plaintiff sustained its burden of proof on the motion by demonstrating that the parties finalized the Pennzoil bonds deal which defendant refused to honor and by submitting affidavits of its director and trader that they had no advance knowledge of the Shell/Pennzoil takeover. Although defendant admits it has no direct evidence that plaintiff had prior knowledge of Shell's contract to acquire Pennzoil, it nonetheless maintains that the timing of this transaction itself raises an issue of fact, or, at the

very least, requires further discovery. This reasoning, while at first blush seductive, is upon reflection, circular and easily rejected (see *Azurite Corp. Ltd. v Amster & Co.*, 844 F Supp 929 [SD NY 1994], *affd* 52 F3d 15 [1995]). "Suspicious trading by itself cannot suffice to warrant an inference that an alleged tipper . . . traded on the basis of material non-public information" (*Securities & Exch. Commn. v Truong*, 98 F Supp 2d 1086, 1097 [ND Cal 2000]; *see also Securities & Exchange Comm. v de Castilla*, 184 F Supp 2d 365, 376 [SD NY 2002] [mere existence of scintilla of evidence insufficient; there must be evidence on which a jury could find insider trading]).

Defendant requests further discovery to establish its claim of insider trading. Defendant theorizes that plaintiff must have known of the Shell/Pennzoil takeover and that there must exist more information establishing that plaintiff is lying. However, defendant's "deductive reasoning is supported by no facts," only the bare supposition that plaintiff must have known of the Shell/Pennzoil deal in light of the timing of its offer to defendant (*Froid v Berner*, 649 F Supp 1418, 1426 [D NJ 1986]). That conclusion is wholly speculative and thus insufficient to justify imposing the burden of further discovery (*id.*). Accordingly, the motion court should have dismissed defendant's affirmative defenses based on insider trading and granted plaintiff partial summary judgment as to liability.

Accordingly, the judgment of the Supreme Court, New York County (Richard B. Lowe, III, J.), entered January 30, 2004, dismissing the complaint for lack of personal jurisdiction and bringing up for review an order, same court and Justice, entered December 19, 2003, which, to the extent appealed from as limited by the briefs, granted defendant's cross motion for summary judgment for lack of personal jurisdiction and denied plaintiff's motion to dismiss certain affirmative defenses and for partial summary judgment as to liability, should be reversed, on the law, without costs, defendant's cross motion denied, the complaint reinstated, plaintiff's motion to dismiss defendant's affirmative defenses of personal jurisdiction, sovereign immunity, comity, and insider trading and for partial summary judgment as to liability granted, and the matter remanded for further proceedings. Appeal from aforesaid order should be dismissed, without costs, as subsumed in the appeal from the judgment.

FRIEDMAN, J.P., NARDELLI, SWEENY and CATTERSON, JJ., concur.

Judgment, Supreme Court, New York County entered January 30, 2004, reversed, on the law, without costs, defendant's cross motion for summary judgment denied, the complaint reinstated, plaintiff's motion to dismiss certain affirmative defenses and for partial summary judgment granted, and the matter remanded for further proceedings. Appeal from order, same court, entered December 19, 2003, dismissed, without costs, as subsumed in the appeal from the judgment.