Harshad R. PATEL, Dinesh R. Patel, Vinu K. Patel, and Vijay R. Patel, Plaintiffs,

v.

Mukesh J. PATEL, Defendant.

No. 06–CV–6378 (ADS)(AKT).

United States District Court, E.D. New York.

July 14, 2007.

Solomon M. Lowenbraun, Great Neck, NY, for the Plaintiffs.

Goldberg Segalls, LLP, by Edward V. Schwendemann, Esq., of Counsel, Mineola, NY, for the Defendant.

### MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

Harshad R. Patel ("Harshad"), Dinesh R. Patel ("Dinesh"), Vinu K. Patel ("Vinu"), and Vijay R. Patel ("Vijay") (collectively, the "plaintiffs") commenced this action against Mukesh J. Patel ("Mukesh" or the "defendant") seeking damages aris-

ing from the defendant's alleged breach of an agreement between the parties. Presently before the Court is the defendant's motion pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure to dismiss the complaint for lack of personal jurisdiction or, in the alternative, for a change of venue pursuant to 28 U.S.C. § 1404(a).

## I. BACKGROUND

A motion to dismiss pursuant to Fed. R.Civ.P. 12(b)(2) is "inherently a matter requiring the resolution of factual issues outside of the pleadings." *Yellow Page Solutions, Inc. v. Bell Atl. Yellow Pages Co.*, No. 00 CIV. 5663, 2001 WL 1468168, at *1 (S.D.N.Y. Nov.19, 2001) (citation omitted). As a result, "all pertinent documentation submitted by the parties may be considered in deciding the motion." *Id.* The following facts are derived from the complaint, affidavits, and documentary exhibits submitted by parties, and are construed in the light most favorable to the plaintiff. *Id.* (citing *CutCo Indus., Inc. v. Naughton*, 806 F.2d 361, 365 (2d Cir. 1986)).

The plaintiffs commenced this action on September 1, 2006, by filing a Summons and Verified Complaint in the Supreme Court of the State of New York, County of Nassau. The defendants were served with the complaint on or about November 7, 2006. On November 30, 2006, within thirty days of receipt of the complaint, the defendants removed the action to this Court.

The plaintiffs are individuals who have engaged in certain business ventures together. Harshad is a resident of Williamsport, Pennsylvania. Dinesh is a resident of Hollis, New York. Vinu is a resident of East Brunswick, New Jersey. Vijay is a resident of Nassau County, New York. Compl. ¶¶ 1–4. Together, during the mid1990s, the plaintiffs were the owners of limited liability companies known as Harmont, LLC ("Harmont") and RAM Properties, LLC ("RAM"). In addition, the plaintiff Harshad owned a 3.59% interest in a limited liability company known as Global Acquisitions and Management LPI. Each of these limited liability companies was organized under the laws of the State of Delaware. Harmont and RAM maintained their principal offices at 190 Jerusalem Avenue, Levittown, New York. Compl. ¶¶ 6–9, 12.

At an unspecified date, the plaintiffs encountered the defendant during the course of their business activities. The defendant Mukesh is a resident of South Carolina. In the Fall of the year 2000, the plaintiffs made an investment in a corporation called Global Acquisition and Management, Inc. ("GAMI") at the same time that Mukesh also made an investment in GAMI. The plaintiffs' investment in GAMI totaled approximately $700,000. The Court is not aware of the amount of the defendant's investment in GAMI. Compl. ¶¶ 5, 15; Affidavit of Vijay R. Patel ("Vijay Aff.") ¶ 4; Affidavit of Mukesh J. Patel ("Mukesh Aff.") ¶ 3.

On November 6, 2000, for reasons undisclosed to the Court, the plaintiffs sought the return of their investment from GAMI, and were able to retrieve $406,000. As of December 1, 2003, the plaintiffs had yet to recover from GAMI the remaining $294,000 of their original investment. Compl. ¶ 16–17; Vijay Aff. ¶ 5.

Apparently, around the time the plaintiffs were attempting to retrieve their investment from GAMI, they learned that GAMI also owed an unspecified amount of money to the defendant. Thus, in or around July 2002, the parties agreed to combine their efforts to retrieve the funds from GAMI. On August 3, 2002, the parties met in New Jersey at the residence of

Vinu and conceived a plan for that purpose. The parties agreed that Mukesh would seek to recover the sum of $294,000 owed by GAMI to the plaintiffs, together with the money owed by GAMI to Mukesh, and that they would share the proceeds of that recovery, with the plaintiffs receiving 50% of the recovered sum, and the defendant recovering the remaining 50%. Compl. ¶¶ 18–19; Vijay Aff. ¶¶ 6–7. The Court finds no indication that any agreement between the parties was ever reduced to writing, and the defendant's counsel states that the purported agreement was oral.

In or about October 2003, the plaintiffs learned that Mukesh recovered approximately $745,000 from GAMI. However, Mukesh paid the plaintiffs only $295,000, which is less than 50% of the recovered amount. It is alleged that Mukesh should have paid $372,500 to the plaintiffs. The plaintiffs commenced this action seeking to recover the remaining $77,500 that they claim Mukesh owes them pursuant to their agreement. Compl. ¶¶ 20–22; Vijay Aff. ¶¶ 8–9.

In an affidavit submitted in support of the motion to dismiss, Mukesh states that he currently lives in Tega Cay, South Carolina. He has no employees or affiliates, either individuals or business entities, located or operating in New York. Mukesh does not own or use any real property located in New York. He has no bank accounts in New York. He has not conducted any personal business in New York for approximately twenty years. Mukesh Aff. ¶¶ 3–8.

According to Mukesh, the only communications he had with the plaintiffs regarding the issues raised in this lawsuit were limited to conversations between he and Harshad, while Harshad was in Williamsport, Pennsylvania. Mukesh states that the only other communications he had with the plaintiffs occurred at the August 3, 2002 meeting at Vinu's residence in New Jersey. At that time, the parties mutually agreed to hire a Greensboro, North Carolina law firm to protect their interests with respect to real estate investments that they made in business entities located in Greensboro, North Carolina and in the State of Florida. Finally, Mukesh states that the parties did not agree that New York would be the forum for any dispute between them, and the issue of a choice of forum was never discussed. Mukesh Aff. ¶¶ 9–11.

By contrast, the only allegation in the plaintiffs' complaint regarding the defendant's contact with or activities in New York is the allegation that the plaintiffs invested in GAMI "after inducements and sales efforts by defendant Mukesh were offered and directed to the plaintiffs at their offices in Levittown, New York." Compl. ¶ 15. In an affidavit, the plaintiff Vijay states that he acted as an accountant for the plaintiffs, and in that capacity he conducted business with the defendant from his office in Nassau County, New York. Vijay states that during the course of those business dealings, the defendant directed billings to Vijay's New York office; had telephone conversations with Vijay while Vijay was at his New York office; and received funds from the plaintiffs and their limited liability companies. Vijay Aff. ¶ 10.

As additional evidence of the defendant's contacts with and activities in New York, the plaintiffs submit an uncashed check, dated October 16, 2006, from Mukesh to the plaintiff Harshad. Vijay Aff., Ex. C. The defendant objects to the Court considering this check because it was offered in an attempted compromise of the dispute giving rise to this action. *See* F.R.E. 408 (barring the admission of evidence of an offer of compromise to prove liability).

Also, the defendant submitted evidence that he drew the check outside of New York, and mailed it to the plaintiff Harshad from South Carolina to Harshad's address in Pennsylvania. Mukesh Aff., ¶¶ 6–7 & Ex. C.

The plaintiffs also submit two e-mail messages from the defendant to Vijay at a "Yahoo.com" e-mail address. The plaintiffs claims that the e-mails represent the defendant's requests for reimbursement for payments he made to the Philadelphia law firm of Saul Ewing LLP and the Greensboro law firm of Smith Moore LLP. Although the plaintiffs claim that the e-mails represent a request for payments from the plaintiffs, the Court has reviewed the messages and finds that they contain no express request. Vijay Aff. ¶¶ 15–18, & Exs. D–F. Mukesh states that he was not in New York when he sent these e-mails and that he did not know where Vijay conducted business or where he would be when he received the e-mails. Mukesh Aff., ¶¶ 10–14.

Also annexed to the Vijay Affidavit are copies of checks made payable to Saul Ewing and Smith Moore, drawn from an account in the name of Harmont, LLC. Vijay Aff. ¶ 18, & Exs. D–E. The plaintiffs claim they delivered these checks from New York to the defendant. Mukesh is not and never was a member or owner of Harmont, and states that he did not prepare or sign the checks. Mukesh Aff., ¶¶ 20–21.

Next, Vijay states that he "and the defendant have had many telephone conversations to and from the defendant with [Vijay] in his office in Nassau County, where [he] has performed his managerial duties for the investments for the plaintiffs." Vijay Aff. ¶ 25. Finally, the plaintiffs submit a billing statement from Smith Moore in North Carolina addressed to Saul Ewing in Philadelphia. Vijay Aff., Ex. F.

## II. DISCUSSION

### A. Legal Standard

■ In a motion to dismiss for lack of personal jurisdiction pursuant to Fed. R.Civ.P. 12(b)(2), the plaintiffs bear the burden of demonstrating that the Court has jurisdiction over the defendant. *See Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 208 (2d Cir.2001) (citation omitted); *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 784 (2d Cir.1999) (citation omitted). Where, as here, the parties have not yet conducted discovery, the plaintiffs may defeat such a motion by making a prima facie showing of jurisdiction by way of the allegations in the complaint, affidavits, and other supporting evidence. *See Bank Brussels Lambert*, 171 F.3d at 784; *Kernan v. Kurz–Hastings, Inc.*, 175 F.3d 236, 240 (2d Cir.1999). Materials considered in determining the motion should be construed in the light most favorable to the plaintiffs, and all doubts resolved in the plaintiffs' favor. *See Whitaker*, 261 F.3d at 208 (quoting *A.I. Trade Fin., Inc. v. Petra Bank*, 989 F.2d 76, 79–80 (2d Cir.1993)). However, conclusory allegations are insufficient to support a prima facie showing of personal jurisdiction. *See Jazini by Jazini v. Nissan Motor Co.*, 148 F.3d 181, 185 (2d Cir. 1998).

### B. Personal Jurisdiction

■ Personal jurisdiction over a nonresident defendant in a federal diversity action is determined by the law of the forum state. *See Whitaker*, 261 F.3d at 208. In New York, the requirements for personal jurisdiction are set forth in the Civil Practice Law and Rules ("CPLR"). *See* N.Y.C.P.L.R. 301, 302

CPLR 301 provides that a "court may exercise such jurisdiction over persons, property, or status as might have been exercised heretofore." N.Y.C.P.L.R. 301. As discussed in the practice commentaries to CPLR 301, the traditional bases of jurisdiction covered by this rule include physical presence, domicile, consent, and corporate presence by virtue of a defendant "doing business" in New York. N.Y.C.P.L.R. § 301, 2001 Practice Commentaries C301:2–C301:10.

CPLR 302 establishes New York's "long-arm" jurisdiction. Pursuant to CPLR 302, the Court may exercise personal jurisdiction over a non-New York domiciliary defendant that is not subject to CPLR 301, based on certain transactions. The Court is permitted to exercise long-arm jurisdiction over a non-New York defendant who:

1. transacts any business within the state or contracts anywhere to supply goods or services in the state; or

2. commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act; or

3. commits a tortious act without the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if he

(i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or

(ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce; or

4. owns, uses or possesses any real property situated within the state.

N.Y.C.P.L.R. 302(a).

In this case, it is not clear which section of the jurisdictional statute the plaintiffs' rely on. Although the plaintiffs refer to CPLR 302 and "long-arm jurisdiction," they make no attempt to establish that the defendant's conduct fits within any one of the four categories of conduct described in CPLR 302(a). On the other hand, several times the plaintiffs state that the defendant is "doing business" in New York sufficient to support jurisdiction. Because the plaintiffs' purported basis of jurisdiction is ambiguous, the Court will analyze the jurisdictional question both under section 301 and section 302(a) of the CPLR.

### C. Analysis of the Plaintiffs' Allegations

The plaintiffs' jurisdictional argument rests on the following allegations: (1) Mukesh sent bills to the plaintiff Vijay at his office in Nassau County; (2) Mukesh communicated by telephone with Vijay while Vijay was at his office in Nassau County; (3) Mukesh accepted funds from the plaintiffs and their companies; (4) Mukesh tendered a check to the plaintiff Harshad; (5) Mukesh hired a law firm from Greensboro, North Carolina in connection with its pursuit of funds from GAMI, and shared the costs of the legal fees with the plaintiffs; and (6) Mukesh sent two email messages to the plaintiff Vijay at his Yahoo.com e-mail address.

### 1. Application of CPLR 301

■ The plaintiffs do not argue that the defendant was present in New York when he was served with process; that he is a New York domiciliary; or that he consented to jurisdiction in New York. Thus, the Court will consider whether the defendant can be found to have been "doing busi-

ness" here. Although the "doing business" test is most often used to find jurisdiction over a corporate defendant, this test can be applied to a nonresident individual, provided that the defendant is "doing business" in New York personally and not on behalf of a corporation. *See Moneygram Payment Sys., Inc. v. Consorcio Oriental, S.A.,* No. 05 Civ. 10773(RMB), 2007 WL 1489806, at *3 (S.D.N.Y. May 21, 2007); *Big Apple Pyrotechnics, & Multimedia Inc.,* No. 05 Civ. 9994(KMW), 2007 WL 747807, at *4 (S.D.N.Y. Mar.9, 2007); *Bradley v. Staubach,* No. 03 Civ. 4160(SAS), 2004 WL 830066, at *4 (S.D.N.Y. Apr.13, 2004) (citations omitted). As the issue was not raised by either party, for the purpose of this motion, the Court assumes that Mukesh conducted business with the plaintiffs in his individual capacity and not for any company.

■ To find that a nonresident defendant is "doing business" in New York under CPLR 301, the defendant must be "engaged in such a continuous and systematic course of doing business here as to warrant a finding of its presence in this jurisdiction." *J.L.B. Equities, Inc. v. Ocwen Fin. Corp.,* 131 F.Supp.2d 544, 547–48 (S.D.N.Y.2001) (quoting *McGowan v. Smith,* 52 N.Y.2d 268, 272, 419 N.E.2d 321, 437 N.Y.S.2d 643 (1981)). "New York law requires that the defendant be present in New York 'not occasionally or casually, but with a fair measure of permanence and continuity.'" *Landoil Res. Corp. v. Alexander & Alexander Servs., Inc.* 918 F.2d 1039, 1043 (2d Cir.1990) (quoting *Tauza v. Susquehanna Coal Co.,* 220 N.Y. 259, 267, 115 N.E. 915 (1917)); *Fashion Fragrance & Cosmetics v. Croddick,* No. 02 Civ. 6294, 2003 WL 342273, at *2 (S.D.N.Y. Feb. 13, 2003).

■ To determine whether a defendant "does business" in New York, courts have focused on the following factors: "the exis-

tence of an office in New York; the solicitation of business in the state; the presence of bank accounts and other property in the state; and the presence of employees of the foreign defendant in the state." *Hoffritz for Cutlery, Inc. v. Amajac, Ltd.,* 763 F.2d 55, 58 (2d Cir.1985); *CES Indus., Inc. v. Minn. Transition Charter Sch.,* 287 F.Supp.2d 162, 166 (E.D.N.Y.2003) (quoting *Hoffritz,* 763 F.2d at 58).

■ The plaintiffs do not allege that Mukesh maintains an office in New York, has a bank account in New York, or that he has any employees in New York. The plaintiffs also do not allege that they had any dealings with the defendant while he was in New York. The defendant denies any such connections with New York, and the plaintiffs do not dispute that assertion. Instead, the plaintiffs' jurisdictional allegations consist of several isolated acts by the defendant that took place in connection with the parties' agreement regarding the recovery of their investments in GAMI. Namely, the plaintiffs allege that the defendant sent billing statements to and had telephone conversations with one of the plaintiffs in New York; received funds from the plaintiffs and their limited liability companies; and sent two emails to one of the plaintiffs. The Court finds that these allegations fail to establish a prima facie case that the defendant was "doing business" in New York.

The "doing business" standard contemplates a substantial and continuous relationship between the defendant and the forum state, with some degree of permanency. *See Landoil,* 918 F.2d at 1043; *Hoffritz,* 763 F.2d at 58. The acts alleged by the plaintiffs are too few in number, and much too isolated and sporadic to establish the type of "continuous and systematic" conduct necessary to find jurisdiction under CPLR 301. In its review of the precedents relevant to this motion to dis-

miss, the Court has found numerous cases where a court declined to find jurisdiction under CPLR 301 notwithstanding allegations of New York contacts significantly more substantial than the plaintiffs allege here. *See Landoil,* 918 F.2d at 1045 (finding that thirteen business trips made by employees of the defendants to New York made sporadically during an eighteen month period were "insufficient to establish the systematic and continuous presence within the state that New York law requires"); *Hoffritz,* 763 F.2d at 57–58 (finding that "extensive" correspondence regarding the parties' business relationship and fifty-four visits to New York to discuss business with the plaintiff was insufficient); *Beacon Enters., Inc. v. Menzies,* 715 F.2d 757, 762 (2d Cir.1983) (holding that the defendant's acts sending a "cease and desist" letter to the plaintiff and sending an unspecified number of mail order sales to New York were insufficient to support jurisdiction under CPLR 301); *Avecmedia, Inc. v. Gottschalk,* No. 03 Civ. 7831(BSJ), 2004 WL 1586411, at *6 n. 2 (S.D.N.Y. July 14, 2004) (holding that the defendants' presence at a meeting in New York, in addition to telephone and e-mail communications to New York plaintiffs were insufficient to satisfy CPLR 301); *Fort Knox Music, Inc. v. Baptiste,* 139 F.Supp.2d 505, 509–10 (S.D.N.Y.2001) (finding that the defendant was not doing business in New York solely by accepting royalty payments over several years from the New York plaintiff); *Hearst Corp. v. Goldberger,* 96 Civ. 3620(PKL)(AJP), 1997 WL 97097 (S.D.N.Y. Feb. 26, 1997) (finding that the defendant's e-mail correspondence with New Yorkers and maintenance of a website accessible in New York here were insufficient to establish that defendant is "doing business" under CPLR 301). Accordingly, the Court finds that the plaintiffs failed to make a prima facie showing that jurisdiction is proper under CPLR 301.

### 2. Application of CPLR 302(a)

As noted above, the plaintiffs do not attempt to characterize the defendant's conduct under any subdivision of CPLR 302(a). However, it is readily apparent that three of the four subsections of CPLR 302(a) are not applicable in this case.

CPLR 302(a)(2) and 302(a)(3) do not apply because the plaintiffs' claim arises out of an alleged breach of contract, not a tort. In addition, it is undisputed that the defendant does not own, use, or possess any real property situated within the state. Thus, CPLR 302(a)(4) does not apply. Finally, there are no allegations or evidence that the defendant "contracts anywhere to supply goods or services in the state," making the second prong of CPLR 302(a)(1) inapplicable.

█ █ The only possible basis for jurisdiction under CPLR 302(a) is if the defendant "transacted business" within New York state. The first prong of CPLR 302(a)(1) confers jurisdiction over a non-domiciliary corporation that "transacts business within the state" if the cause of action arises out of the defendant's in-state conduct. N.Y.C.P.L.R. 302(a)(1); *Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp.,* 98 F.3d 25, 29 (2d Cir.1996); *Hoffritz,* 763 F.2d at 61; *see also D'Amato v. Starr,* No. CV 06–2429(BMC)(WDW), 2007 WL 895793, *3 (E.D.N.Y. Feb. 27, 2007) ("In all cases, there must be a 'strong nexus between the plaintiff's cause of action and the defendant's in state conduct' for long-arm jurisdiction to apply.") (citation omitted). In contrast to "doing business," "transacting business" "requires only a minimal quantity of activity, provided that it is of the right nature and quality." *Manhattan Life Ins. Co. v. A.J. Stratton Syndicate,* 731 F.Supp. 587, 592

(S.D.N.Y.1990) (citations and internal quotations omitted). A single transaction may suffice for personal jurisdiction under Section 302(a)(1), and physical presence by the defendant in the forum state during the activity is not necessary. *Bank Brussels Lambert,* 171 F.3d at 787.

▬ To determine whether a party in a contract action has "transacted business" within the meaning of Section 302(a)(1), courts focus primarily on the following factors:

> (i) whether the defendant has an ongoing contractual relationship with a New York [plaintiff]; (ii) whether the contract was negotiated or executed in New York and whether, after executing a contract with a New York business, the defendant has visited New York for the purpose of meeting with parties to the contract regarding the relationship; (iii) what the choice-of-law clause is in any such contract; and (iv) whether the contract requires [the defendant] to send notices and payments into the forum state or subjects them to supervision by [a] corporation in the forum state.

*See Sunward Elec., Inc. v. McDonald,* 362 F.3d 17, 22–23 (2d Cir.2004) (quoting *Agency Rent A Car,* 98 F.3d at 29). Another important factor is whether the contract is to be performed in New York. *See Cooper, Robertson & Partners, L.L.P. v. Vail,* 143 F.Supp.2d 367, 371 (S.D.N.Y. 2001) (stating that "[i]n determining jurisdiction, the place of performance is more critical than the place of the execution of a contract"). No single factor is dispositive. Rather, a finding of personal jurisdiction must be based upon the totality of the circumstances. *Agency Rent A Car,* 98 F.3d at 29 (citation omitted).

▬ The Court finds that the first factor is satisfied and that the parties had an ongoing contractual relationship. The plaintiffs contend that in or about July 2002, the parties agreed to combine their efforts in retrieving their investments from GAMI. This relationship continued through approximately October, 2003, when the plaintiffs learned that the defendant recovered funds from GAMI, but did not remit the appropriate amount of those funds to them. Evidence of the continuing nature of this relationship is found in the e-mail messages from Mukesh to Vijay, which were sent on May 28, 2003 and August 14, 2003. This is sufficient to satisfy this first factor.

Turning to the second factor, namely whether the agreement was negotiated or executed in New York, the plaintiffs do not allege that any aspect of the agreement between the parties was negotiated or executed in New York. It is undisputed that the defendant never traveled to New York during the negotiations or the period when the agreement was formed. It is also undisputed that the principal negotiations regarding the agreement between the parties occurred in New Jersey, and that the defendant never traveled to New York to meet with the plaintiffs regarding their agreement subsequent to its execution.

Third, the plaintiffs do not claim that the parties agreed that New York would be the forum for any legal dispute between them. The defendant specifically denies any such understanding. Mukesh Aff. ¶ 11.

Next, regarding the fourth factor, the defendant disputes the plaintiffs' claims that he sent invoices and checks and to the plaintiffs directed to Vijay's offices in Nassau County, and made telephone calls to the plaintiffs in New York. However, on this type of motion the Court construes the parties' submission in the light most favorable to the plaintiffs, and resolves all doubts resolved in their favor. *See Whit-*

*aker v. Am. Telecasting, Inc.,* 261 F.3d 196, 208 (2d Cir.2001) (citation omitted). Thus, the Court finds that the plaintiffs satisfied the fourth factor.

Finally, there are no allegations that any part of the parties agreement was to be performed in New York. The defendant claims, and the plaintiffs do not dispute, that the subject of the agreement between the parties was the collection and distribution of funds obtained by the defendant related to real estate investments that the parties made in business entities located in Greensboro, North Carolina and in the state of Florida. Mukesh Aff. ¶ 10. Because the subject matter of the agreement between the parties is located in North Carolina and Florida, the Court finds that this factor does not favor jurisdiction.

The only evidence that the plaintiffs have proffered to support jurisdiction is that the parties had an on-going relationship, and that the defendants sent limited corresponded, invoices, or checks, to one of the plaintiffs' offices in New York, and communicated with the plaintiffs by telephone. "[C]ourts seem generally loath to uphold jurisdiction under the 'transaction in New York' prong of CPLR 302 if the contract at issue was negotiated solely by mail, telephone, and fax without any New York presence by the defendant." *Worldwide Futgol Assoc., Inc. v. Event Entm't, Inc.,* 983 F.Supp. 173, 177 (E.D.N.Y.1997) (citation omitted); *see also Kulas v. Adachi,* No. 96 CIV. 6674(MBM), 1997 WL 256957, *7 (S.D.N.Y. May 16, 1997) ("[T]he New York courts that specifically encounter defendants whose sole contact with the state is by way of telephone and mail, refuse to exercise jurisdiction.") (citations omitted).

Under some limited circumstances, a party may be found to have "transacted business" on the basis of telephone communications. For that to be the case, the Court must find that the defendant "actively projected" himself into New York, thereby availing himself of the business privileges and protections of the state. *See Chong v. Healthtronics, Inc.,* No. CV–06–1287 (SJF)(MLO), 2007 WL 1836831, *9 (E.D.N.Y.2007); *Worldwide Futgol,* 983 F.Supp. at 177 (citation omitted). The cases involving such "active projection" include conduct by the defendant such as participating in an auction held in New York by receiving and transmitting bids over the telephone, *Parke–Bernet Galleries, Inc. v. Franklyn,* 26 N.Y.2d 13, 18, 308 N.Y.S.2d 337, 256 N.E.2d 506 (1970), or successfully negotiating the terms of multi-million dollar transaction after re-initiating contact with the plaintiff's New York office, *Deutsche Bank Secs. v. Montana Bd. of Investments,* 21 A.D.3d 90, 94, 797 N.Y.S.2d 439, 443 (1st Dep't 2005). The Court finds no such "active projection" by the defendant in this case based on the plaintiffs' non-specific allegations of several telephone calls, two emails, and billings. *See, e.g., Fiedler v. First City Nat'l Bank of Houston,* 807 F.2d 315 (2d Cir.1986) (finding no personal jurisdiction over defendant-bank that made two telephone calls and a mailing to New York plaintiffs).

The plaintiffs afford great weight to the fact that Vijay, who provided accounting services to the plaintiffs in managing their investments, maintains an office in Nassau County. Although the plaintiffs may have transacted business in New York relevant to the agreement between the parties and the GAMI investments, the plaintiffs' business transactions in New York are not at issue when assessing personal jurisdiction over the defendant. The Court must evaluate the defendant's activities and conduct. *See Success Mktg. Elec. Inc. v. Titan Sec. Inc.,* 204 A.D.2d 711, 612 N.Y.S.2d 451 (2d Dept.1994).

Considering the totality of the circumstances, the Court finds that plaintiffs failed to establish a prima facie case that the defendant "transacted business" in New York such as to justify the exercise of personal jurisdiction pursuant to CPLR 302(a)(1). Accordingly, the defendant's motion to dismiss the complaint for lack of personal jurisdiction is granted.

## III.  CONCLUSION

Based on the foregoing, it is hereby

**ORDERED,** that the defendant's motion pursuant to Fed.R.Civ.P. 12(b)(2) to dismiss the complaint for lack of personal jurisdiction is granted;  and it is further

**ORDERED,** that the Clerk of the Court is directed to close this case.

**SO ORDERED.**